FRANCIS A. RUGGIERO, administrator, *vs.* WILLIAM MELLO, JUNIOR.

Bristol.    October 31, 1955. — December 2, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence,* Motor vehicle.

A finding of negligence on the part of the operator of a delivery truck resulting in a boy's death was warranted by evidence that when the operator parked the truck on a street and went into a house twice he saw the boy with a companion on the sidewalk near the truck, that he refused their requests for a ride, that when he returned to the truck the second time the boy was "on the truck," that the operator then started the truck ahead without knowing where the boy was or trying to find out, and that thereupon the right rear wheel went over something and the boy was found lying in the street.

TORT.    Writ in the Superior Court dated October 11, 1951.

The action was tried before *Hurley,* J.

*William J. Fenton,* for the defendant.

*William A. Torphy,* for the plaintiff, submitted a brief.

COUNIHAN, J.    This is an action of tort by the administrator of the estate of Francis A. Ruggiero, Junior, who was the plaintiff's minor son, to recover for his death, alleged to have been caused by the negligent operation of a truck by the defendant.   There was a verdict for the plaintiff.   The action comes here upon the defendant's exception to the denial of his motion for a directed verdict.   There was no error.

In considering the disposition of a motion for a directed verdict for a defendant, the familiar rule applies, which requires no citation of authority, that we only consider the evidence in its aspects most favorable to the plaintiff.   This evidence was substantially as follows:   The deceased, who was about six years old at the time of the accident, was

playing shortly before the accident on the southerly side-
walk of London Street in Fall River with a boy named
Fitzgibbons, who was about the same age.   London Street
was about twenty-four feet wide and ran east and west.
The defendant drove an open body delivery truck in a
westerly direction on this street and stopped the truck in
front of number 265 which was on the southerly or left side
of the street as the driver was proceeding.   His purpose was
to deliver soda water to a customer who lived at number 265.
The truck had a large hood and cab, with a body in the rear
of the cab which had several shelves on which cases of soda
water bottles were stacked.   The top shelf was so high that
the bottles in the cases almost reached the height of the top
of the cab.   Attached to the top of the body was a large ad-
vertising sign which ran over the center of the body from the
front of it to the rear of it.   The top of this sign extended
beyond the top of the cab.   There was a running board on
each side of the truck which extended from the end of the
fender over each front wheel for about three or four feet to
the bottom of the rear of the cab.   The running board on the
right side of the truck (and presumably on the left side as
well) was about one and a half to two feet above the sur-
face of the street.   The lower part of the windows of the
cab was about three and a half to four feet above the run-
ning board.   The right window of the cab was open at the
time of the accident.   There were dual wheels and tires on the
rear end of the truck.   A photograph of the truck was in evi-
dence as an exhibit and has been certified for use before us.
From this photograph it appears that the body of the truck
was at least five or six feet long and the bottom of it was
at least three or four feet above the street.   Attached to the
right side of the body at its front and rear was what appears
to be a metal step which extended about a foot and a half
below the bottom of the truck.

When the defendant stopped in front of the house num-
bered 265 he observed the two boys playing on the sidewalk
in front of this house.   He got off the truck to go into this
house to get an order.   The boys asked him for a ride but

he told them that he was not permitted to give anyone a ride. When he came out of the house a few minutes later he saw the boys on the sidewalk near the rear of the truck. They again asked for a ride and were refused. He then went to the left side of the truck, made up the customer's order, and delivered it. He came out of the house after about five minutes and observed the boys on the sidewalk near the rear of the truck. He again refused their request for a ride. The defendant in his testimony gave several versions as to when and where he last saw the deceased, but the one which we think is most favorable to the plaintiff is that in which he said that when he returned to the truck after making the delivery "Francis Ruggiero, Jr., the boy who died, was on the truck and the Fitzgibbons boy was on the south sidewalk." He also said that when he was getting into the truck he saw the Fitzgibbons boy on the right running board looking into the truck through the right window of the cab. He told him to get off the truck. That boy did get off the truck and walked over to the northerly sidewalk. The defendant then started the motor and proceeded westerly on London Street in a diagonal direction to get onto the right side of the street. When he put the truck in motion he did not know where the deceased was and he made no effort to find out or give him any warning. As he pulled away from the curb he felt the right rear wheels of the truck go over something. He stopped the truck at once, got out, and saw the deceased lying in the street about six to twelve feet to the rear of the truck. There was blood on the street about nine feet from the southerly curb. In a conversation with the parents of the deceased sometime after the accident the defendant told them that he did not know what had happened. He said the boy was on the truck and he told him to get off and after that he did not really know.

In these circumstances we are of opinion that the judge correctly denied the defendant's motion for a directed verdict. The defendant saw these children hovering around the truck and he was aware that they were anxious to get a ride. In fact he saw the deceased on the truck before he

started and he saw the Fitzgibbons boy on the right running board. He warned the Fitzgibbons boy to get off the truck and waited until he did so before he started the truck. He paid no attention at all to the deceased nor did he give him any warning that he was to start. We think that the jury could warrantably find on the evidence in this case that no prudent operator would start and drive his truck under these conditions without reasonable investigation as to the where-abouts and safety of the deceased.

We think that this case more nearly resembles *Falzone* v. *Burgoyne*, 317 Mass. 493, 496, and the cases cited therein, than it does *O'Reilly* v. *Sherman*, 298 Mass. 571, *Burke* v. *Durland*, 312 Mass. 291, *Cioffi* v. *Lowell*, 316 Mass. 256, *Walker* v. *Bullard*, 317 Mass. 288, and cases cited by the defendant. The more recent case of *Barry* v. *Panich*, 324 Mass. 162, appears to be in accord with our view of the instant case.

The defendant does not seriously argue contributory negligence of the deceased. In any event we think that the question whether he exercised the care of the ordinary prudent boy of his age was for the jury.

*Exceptions overruled.*