[Civ. No. 17201.   First Dist., Div. Two.   July 31, 1957.]

JOHN W. PARROTT, Appellant, v. BELA A. FURESZ, Respondent.

John J. Taheny for Appellant.

Ropers & Majeski for Respondent.

DOOLING, J.—Plaintiff appeals from a judgment for defendant entered on a jury's verdict.   The action is one for personal injuries.   While driving northerly on Canada Road, plaintiff crossed over to the southbound lane at some distance from its intersection with Pulgas Road intending to make a left turn into Pulgas Road.   While in the southbound lane he was struck from the rear by the automobile driven by defendant.   An automobile driven by one Sworthout had been following plaintiff's car and defendant, also going northerly,

had turned into the southbound lane to pass Sworthout. The evidence will be more fully discussed in considering the failure of the court to give instructions on the last clear chance doctrine.

We are satisfied that plaintiff must be held guilty of negligence as a matter of law in entering and proceeding northerly for a considerable distance in the southbound lane and that his purpose to ultimately make a left turn cannot excuse such conduct. For that reason we will consider only the failure of the court to instruct on the last clear chance.

In determining whether the trial court should have instructed the jury on the doctrine of last clear chance "[w]e must view the evidence most favorable to the contention that the doctrine is applicable." (*Selinsky* v. *Olsen,* 38 Cal.2d 102, 103 [237 P.2d 645] ; *Bonebrake* v. *McCormick,* 35 Cal.2d 16, 19 [215 P.2d 728].)

Taking the evidence most favorable to the plaintiff on the theory of last clear chance we may fairly summarize it as follows : When plaintiff's automobile was 300 feet from the intersection of Pulgas Road he extended his left arm horizontally from the window of his car to indicate that he was making a left turn and at 225 feet from the intersection he actually began to turn left into the southbound lane. Plaintiff testified that he was then 250 feet ahead of the automobile driven by Sworthout which was following him in the northbound lane. At that time both the plaintiff and Sworthout were traveling at a speed of between 35 and 45 miles per hour. While plaintiff was gradually slowing his speed preparatory to making a left turn into Pulgas Road, according to Sworthout's testimony the distance between their cars was not appreciably decreased when plaintiff had straightened his car out in the southbound lane. Plaintiff testified that he was 175 feet from the intersection of Pulgas Road when his car was completely straightened in the southbound lane. At that moment he saw the lights of defendant's automobile as his car started to pass Sworthout's. Taking the evidence most favorable to plaintiff defendant's car was then more than 200 feet behind plaintiff's car and at least 400 feet from the point of ultimate collision, which was 6 feet south of the southerly line of Pulgas Road.

Sworthout testified that the visibility was good and it was still light. Sworthout had no difficulty seeing plaintiff's

extended left arm. He testified: "I noticed it way out, I noticed particularly he had an awfully long arm; it extended an awfully long ways."

When defendant passed Sworthout's car he was traveling at a speed of 55 to 65 miles per hour. Plaintiff testified that he kept his left arm extended horizontally from the window of his car continuously from the time that he started to turn into the southbound lane until a point about 40 feet from Pulgas Road when he withdrew it to make the left hand turn into that road. He realized at 60 feet from Pulgas Road that defendant's car was continuing in the southbound lane and that he was in danger of being struck by it and he began to wave his extended left hand up and down. It was then too late for him to attempt to turn into the northbound lane and he attempted to make the left turn into Pulgas Road. His left rear fender was struck by the left front portion of defendant's car as he was already turned at an angle to enter Pulgas Road.

Sworthout testified that when he first heard the squealing of defendant's brakes defendant's car was already 20 to 25 yards ahead of Sworthout's car. The tire-marks from the braking of defendant's car measured 107 feet to the point of impact, so that the jury could find that at well over 100 feet from the point of collision defendant was already 60 to 75 feet ahead of Sworthout's car.

The elements of the last clear chance doctrine have been often stated. We quote the requirements as reiterated in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 740 [306 P.2d 432]: "(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure."

Under the evidence above summarized the jury could find the existence of all of these required elements. The negligence of the plaintiff in driving on the wrong side of the

highway is clear. The jury could find that plaintiff was unaware of his danger until it was too late for him to escape. The plaintiff was in plain view of defendant and directly in front of him with his left arm extended horizontally for 400 feet before the collision. There was nothing between plaintiff's car and defendant to obscure defendant's view. Defendant was at all times looking along the road in front of him. It was still light with good visibility. The jury could therefore infer that defendant saw plaintiff directly in front of him with his arm extended from his car as soon as he turned into the southbound lane to pass Sworthout. (*Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 105 and cases there cited). Seeing plaintiff thus proceeding in the wrong traffic lane with his hand thus extended, indicating a left turn and not a right one, the jury could find that defendant should have known that plaintiff did not intend to turn back into the northbound lane and instead was proceeding unaware of his peril. If the jury so found they could further find that defendant had the last clear chance to avoid the collision by turning back into the northbound lane ahead of Sworthout's car. If the jury believed Sworthout's testimony that defendant was 60 to 75 feet ahead of Sworthout's car when he first set his brakes over 100 feet from the point of collision the jury could reasonably conclude that defendant had ample time to turn back to the northbound lane after it must have been obvious to him that plaintiff intended to continue in the southbound lane. The possibility of avoiding a collision by turning into another lane has been held sufficient to justify the application of the doctrine of last clear chance where plaintiff's peril was observed at a distance of 150 feet in *Bonebrake* v. *McCormick, supra,* 35 Cal.2d 16. Here the jury could reasonably find that plaintiff's peril and unawareness were evident to defendant in the neighborhood of 400 feet from the point of collision.

█ The basic instruction proposed by plaintiff on last clear chance was BAJI Number 205 recently held to be erroneous in certain particulars in *Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729. Respondent, relying on the rule that the trial court is not bound to give a proposed instruction which is erroneous in any particular nor to modify it to state the law correctly, argues that plaintiff has no standing on appeal to complain of the court's failure to instruct on last clear chance.

One of the most troublesome questions which can confront

appellate courts is the effect on pending litigation of the announcement of a new rule of law in another case. The BAJI instruction proposed by plaintiff had had the tacit approval of our appellate courts for many years prior to the decision of Brandelius although the precise attack upon it upheld in that case had not been urged by counsel nor apparently discerned by any of the courts which had tacitly approved it. As late as April 1953 the Supreme Court said of this instruction in *Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614 at page 617 [255 P.2d 785] : "The form of the proposed instruction is not in question." The Supreme Court cited following this statement two cases from the District Courts of Appeal. In one of these, *Root* v. *Pacific Greyhound Lines, Inc.*, 84 Cal.App.2d 135 at page 137 [190 P.2d 48] : the District Court of Appeal had said flatly of the same instruction : "The foregoing instruction correctly states the law."

The appellant's counsel in 1955, when this case was tried, had every reason to believe that BAJI Number 205 not only correctly stated the law but that it had the approval of the Supreme Court and of the District Courts of Appeal. Appellant is entitled to a trial on the issue of last clear chance. He has not had one. It would be manifestly unfair and a mockery of justice to deprive him of one because his counsel lacked the gift of prophecy and could not foresee that in 1957 the Supreme Court in Brandelius would have pointed out to it an error in the instruction which had theretofore escaped the combined observation of several appellate courts and numerous able attorneys.

Our Supreme Court in somewhat analogous cases has found it possible to give relief to counsel and litigants caught in similar procedural traps.

In *People* v. *Kitchens*, 46 Cal.2d 260 [294 P.2d 17], the court held that it would consider the question whether evidence introduced against the appellant was illegally obtained in violation of the rule first announced in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], even though the evidence was not objected to, if the case had been tried before the filing of the Cahan opinion. While expressly adhering to the rule that ordinarily the admissibility of evidence will not be reviewed on appeal without the proper objection in the trial court, the court said : "we conclude that it is not applicable to appeals based on the admission of illegally obtained evidence

in cases that were tried before the Cahan decision." (P. 262.) The court pointed out on page 263 that: "A contrary holding would place an unreasonable burden on defendants to anticipate unforeseen changes in the law . . ."

In *Phelan* v. *Superior Court*, 35 Cal.2d 363 [217 P.2d 951], the Supreme Court entertained a mandamus proceeding in the particular case although laying down a rule for the future that since the remedy by appeal was adequate, mandamus would not be available in similar cases. The court noted that the time for appeal had expired. The court said at pages 371-372:

"In view of the uncertainty which has existed in the law with respect to the appealability of the order in question and also in view of the holdings of this court that an appeal is not adequate in a case of this type, petitioner should not be denied the use of the writ because of his failure to appeal. It would obviously be a hardship upon a litigant who has been misled by such uncertainty in the law if we were to resolve the uncertainty and in the same proceeding deny his petition for a writ on the ground that he in fact did have an adequate remedy by appeal." (See also the discussion of the general subject in *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, where the court said at page 680 [312 P.2d 680]: "The determination by the court is dependent upon the equities in each case." Cf. *Hildebrand* v. *State Bar,* 36 Cal. 2d 504, 514 [225 P.2d 508] where a theretofore doubtful rule of professional conduct was made prospective only in its application.)

Particularly pertinent is the following statement of the Supreme Court of Montana in *Broderick* v. *Stevenson Consol. Oil Co.,* 88 Mont. 34 [290 P. 244, 246]: "Plaintiff had the right to try her case on the supposition that the rule announced in the Hochsprung Case would be adhered to. The opinion in that case was decisive of this case in her favor, and it may reasonably be inferred that plaintiff omitted to introduce evidence of misrepresentation in reliance upon the Hochsprung Case. . . . Under the circumstances, plaintiff should be afforded an opportunity to make proof of her allegations of misrepresentation."

In equity and justice appellant should not be deprived of his right to a trial on the issue of last clear chance because the instruction proposed by his counsel on the subject in reliance upon earlier decisions has since been held to be

erroneous. Obviously on a new trial an instruction conformable to the rule announced in Brandelius should be given.

Judgment reversed.

Kaufman, P. J., and Lernhart, J. pro tem.,* concurred.

A petition for a rehearing was denied August 30, 1957, and respondent's petition for a hearing by the Supreme Court was denied September 25, 1957. Schauer, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.