[Civ. No. 23845. Second Dist., Div. One. Oct. 9, 1959.]

WILLIAM LEON GUYTON, a Minor, etc., Appellant, v.
CITY OF LOS ANGELES et al., Respondents.

Morris N. Karch for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Herbert Hargrave and Weldon L. Weber, Deputy City Attorneys, for Respondents.

LILLIE, J.—Plaintiff minor, then not quite 11 years old, sustained personal injuries when struck by a police car owned by defendant city while he was riding a bicycle on East 27th Street in the city of Los Angeles. He has appealed from an adverse judgment after a jury trial, maintaining that the court committed prejudicial error in the giving and refusal of certain instructions.

The accident occurred in a residential area approximately midway in the block on December 28, 1955, around 11:30 a.m. The pavement was dry and the weather clear and sunny. There are residences, one plaintiff's home, and numerous driveways located on the south side of the block. At the time and point of the accident, cars were parked more or less solidly along the south side of the street, which is 40 feet wide, leaving two lanes of traffic open.

Plaintiff had been playing "on bikes" with another child near his home. He rode his bicycle a short distance eastward on the south sidewalk of 27th Street to a private driveway; upon reaching that point, he turned left and into the street on an angle where he was struck on the left side by the police car traveling east.

Officer Higgins, the driver of the car, was concededly familiar with the area and knew that children lived there.

He also was aware that schools had recessed for the Christmas holidays. It is further without dispute that the police car was making a routine patrol and not an emergency call. Higgins stated that he and his partner, Officer Surratt, had been traveling south on Central Avenue and turned left onto 27th Street; that they proceeded easterly on that street some 300 feet at a speed estimated by them to be between 15 to 20 miles per hour; and that the instant he saw plaintiff he "hit" his brakes and the car skidded to a stop. He further stated that at the moment of impact the bicycle was traveling about 5 to 8 miles per hour. The officer did not recall seeing children playing in the area, and there was no oncoming traffic. The police car left 23 feet of skid marks on the left side and 20 feet on the right side prior to impact; following it there were an additional 5 feet of skid marks. Witnesses placed the point of impact at between 12½ and 14 feet from the south curb.

Plaintiff testified that he stopped his bicycle before entering the street and looked in both directions. A truck was parked immediately west of the driveway. Seeing and hearing nothing, he entered the street on an angle, heading northeasterly from the driveway, riding his bicycle "pretty hard." Two witnesses for the plaintiff placed the speed of the police car in excess of 40 miles per hour. One of these witnesses stated that his attention was attracted to the corner of 27th and Central by the screeching of tires as a car, identified as the one here involved, made a left turn onto 27th Street and accelerated its speed as it passed the point where the witness was standing. The driver was observed to be looking at something on the front seat next to his passenger. The same witness also said that he had observed children playing in the area.

Appellant's contentions may be grouped into three categories: (1) the court erroneously refused proffered instructions on the standard of conduct for a child and compounded that error by instructing on the issue of contributory negligence without qualifying material explanatory of the standard of care required of children; (2) an instruction based on the doctrine of last clear chance should have been read; and (3) it was error for the court to instruct on "looking and not seeing" (BAJI 140).

While it is the general rule that a person must himself have been free from fault to warrant recovery for an injury resulting from the negligence of another, judgment is not passed on the conduct of children with the same strictness as in the case of adults. Thus, a child is required to exercise

only that degree of care which children of his maturity and capacity ordinarily exercise under similar circumstances; and the question arising out of this standard of care is usually one of fact for the trier of fact (jury) (*Singer* v. *Marx*, 144 Cal.App.2d 637, 642 [301 P.2d 440]). ■ Therefore, unless instructions fully and fairly state the pertinent principles of law to be applied, a jury cannot intelligently make such a factual determination—a party upon request "is entitled to have the jury given instructions properly applicable to his case with sufficient completeness to enable the jury to fully comprehend the principles of law which they are directed to apply" (*Fry* v. *Sheedy*, 143 Cal.App.2d 615, 626 [300 P.2d 242]).

■ The principle of law governing the conduct of minors just stated dealt with the heart of plaintiff's case and should have been read to the jury in the form proposed by him (BAJI 147). Thus, in *Blanton* v. *Curry*, 20 Cal.2d 793, 804 [129 P.2d 1], the court declared that plaintiff, "being a minor, was entitled to an instruction as to the duty of care exacted of minors." In *Kelley* v. *City & County of San Francisco*, 58 Cal.App.2d 872, 876 [137 P.2d 719], it was held to be error to refuse an instruction that what constitutes ordinary care on the part of a minor is to be judged by that degree of care customarily exercised by children of like age (13 years), mental capacity and discretion (the minor, it further appears, was a junior traffic officer and attending junior high school). To the same effect is *Tomson* v. *Kischassey*, 144 Cal.App.2d 363, 367 [301 P.2d 55]. Conversely in *Garibaldi* v. *Borchers Bros.*, 48 Cal.2d 283, 292 [309 P.2d 23], approval was given to instructions which "emphasized the determinative consideration to be not whether the minor plaintiff acted as an adult should, but whether he used the care ordinarily exercised by like children in similar circumstances." And in *Richmond* v. *Moore*, 103 Cal.App. 173, 181 [284 P. 681], the court stated: "The court properly refused to instruct the jury upon the duty of an adult person when crossing a street. The requested instruction as worded would require of the minor respondent the same care as that required of an adult."

■ Likewise refused was plaintiff's proffered instruction relating to the care required for the safety of a child (BAJI 148): "Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties. One dealing with children must anticipate the ordinary

behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child might result.'' The refusal of this instruction, and that of its predecessor (BAJI 147), is defended on the ground that plaintiff was not prejudiced ''since no instructions could change the fact that a case had not been, and could not be, proved against the City.'' Respondent also argues that any seeming error was cured by the giving of BAJI 102-A: ''The amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to a reasonably prudent person in the particular situation and circumstances involved.'' This instruction, while correct as far as it went, needed the clarification or elaboration relative to the behavior of children tendered by the instructions which the court declined to give.

The remainder of respondent's argument is predicated upon its own account of the accident. ■ It is a settled rule that a party is entitled to propose an instruction in conformity with any theory which finds substantial evidentiary support (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 633 [255 P.2d 795]). ■ Also generally accepted in this state is the rule that ''the operator of a motor vehicle who is or should be cognizant of the proximity of children must exercise ordinary care to discover their presence upon or near his vehicle and upon such discovery to use ordinary care to avoid inflicting injury upon them'' (*Kading* v. *Willis*, 135 Cal.App.2d 82, 87 [286 P.2d 861]). ■ The Kading case *supra* further holds that ''(o)rdinarily the question of whether a driver should be alerted to the necessity of looking for the presence of children is one of fact for the jury to solve, as is also the question of whether that duty, once it arises, has been properly performed'' (p. 88). ■ The instant accident took place during the Christmas holidays. Officer Higgins admitted that he was familiar with the specific area, being then assigned to that particular police district, and that he knew there were children living in the area. His partner, Officer Surratt, admitted seeing a boy riding a bicycle on the sidewalk prior to the accident. A witness for plaintiff testified that he had seen children playing in the area; and he and another plaintiff's witness also placed the speed of the police car in excess

of 40 miles per hour, the street being concededly in a residential zone. Under the circumstances, we are of the view that plaintiff was entitled to have his theory of the case go to the jury by way of instructions, as it involved the standard of conduct there and then required for his safety.

 In the light of what has heretofore been said, it was likewise error for the court to give instructions on (1) contributory negligence (BAJI 103.1), (2) the issues to be determined when contributory negligence is claimed (BAJI 113), and (3) the duty of a person using highway (BAJI 138 A), without any qualifying statement as to the plaintiff's status as a minor. Respondent's only answer to appellant's contention in this regard is that no objection was made at the time the challenged instructions were given. Having requested specific instructions on the subject of his minority, appellant clearly is in a position to here question the correctness of the charge to the jury even though he made no complaint at the time it was given in the lower court (*Barrera* v. *De La Torre*, 48 Cal.2d 166, 170 [308 P.2d 724] ; also it is well settled in this state that upon appeal a litigant is deemed to have excepted to each instruction (Code Civ. Proc., § 647).

Appellant next contends that the jury should have been given his proposed instruction on the doctrine of last clear chance. The governing rule is restated in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432], and need not be here repeated. [11] In determining the issue presented we are required to view the evidence in the light most favorable to appellant's case (*Bonebrake* v. *McCormick*, 35 Cal.2d 16, 19 [215 P.2d 728]). Accordingly, for the purpose of this discussion, we do not necessarily accept the statement of Officer Surratt that ''approximately one second'' elapsed from the time of first seeing the boy to the time of the collision. Officer Higgins testified that his car was traveling approximately 17 miles per hour immediately prior to the accident. Officer Long, another witness for defendant, gave testimony from which it could be argued, in conjunction with the physical evidence and the use of a mathematical formula, that Higgins was from 60 to 90 feet from plaintiff when he was first seen and that approximately four seconds elapsed within which to avoid the accident. While '' (c)alculations so nice are unavailing to prove anything except the unity of the whole transaction'' (*Rodabaugh* v. *Tekus*, 39 Cal.2d 290, 295 [246 P.2d 663]), and ''the doctrine of last clear chance never meant a splitting of seconds when emergencies arise''

(*Bagwill* v. *Pacific Electric Ry. Co.*, 90 Cal.App. 114, 121 [265 P. 517]), the court stated in *Peterson* v. *Burkhalter*, 38 Cal.2d 107, 112 [237 P.2d 977], that the proposition may not be urged that "as a matter of law, a defendant with two seconds within which to avoid an accident, had no chance to do so." As further observed in the Peterson case, *supra* (p. 113), such a defendant may have had "sufficient time in which to do something," either by turning his automobile or sounding his horn. Here it is undisputed that Higgins made no attempt to avoid the accident by turning or swerving his car into the northern lane of traffic. This lane was free—no car was visible or approaching. If, as he says, Higgins was traveling only 17 miles per hour, in turning or swerving he would not have run the grave risk of overturning (*Hickambottom* v. *Cooper Transp. Co.*, 163 Cal.App.2d 489, 492 [329 P.2d 609]). Respondent has nothing to say about this theory or facet of the case, relying solely upon declarations in *Berton* v. *Cochran*, 81 Cal.App.2d 776 [185 P.2d 349], the factual situation in which is quite similar, although it does not appear, as here, that swerving or turning could have prevented the collision.

Cases in which the problem has been presented adhere to the view that a driver must at all times exercise ordinary care to avoid a collision including swerving or altering his course, in addition to applying his brakes, if that would be a reasonable means of avoiding the collision. In *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915], it was pointed out that the defendant could have avoided the collision by stopping, swerving or blowing his horn. The court said in *Podeszwa* v. *White*, 99 Cal.App.2d 777, at page 779 [222 P.2d 683]: "Manifestly by a very slight swerve of his truck he could have passed behind the coupé and avoided the accident"; and in *Bragg* v. *Smith*, 87 Cal.App.2d 11, 15 [195 P.2d 546], it declared: "The defendant actually discovered the situation and realized the danger while it was still possible to avoid the collision by the use of ordinary care on his part. The opportunity was clearly open to him to avoid the accident by turning either to his right or left." The same was recognized in *Gardini* v. *Arakelian*, 18 Cal. App.2d 424, at page 431 [64 P.2d 181]: "It further appears that there was a clear open space some 25 feet in width from the northerly edge of the pavement to the store building along which a reasonably cautious person might safely and properly drive around the defendant's right-hand side of the approaching car, and thus avoid the accident." In *Parrott*

v. *Furesz,* 153 Cal.App.2d 26, 29 [314 P.2d 47], there appears a similar statement: "The possibility of avoiding a collision by turning into another lane has been held sufficient to justify the application of the doctrine of last clear chance where plaintiff's peril was observed at a distance of 150 feet in *Bonebrake* v. *McCormick, supra,* 35 Cal.2d 16." Where, as here, there were 15 feet of open lane to the driver's left, and where it could be argued that the driver had approximately four seconds and from 69 to 90 feet within which to alter his course, there appears to be validity to appellant's theory that the accident could have been avoided by turning into that lane. Since it is not improper to instruct the jury on the doctrine of last clear chance when there exists in the record any valid theory to support the application of the principle (*Gardini* v. *Arakelian, supra,* 18 Cal.App.2d 424, 430), appellant's contention must be sustained.

 Finally, it is claimed that the instruction on "looking and not seeing" should not have been given. As read to the jury, the instruction (BAJI 140) made mention of the permissible inference that when one listens he hears that which is clearly audible." Higgins admitted that he did not blow his horn, and there is no evidence otherwise which would have put plaintiff's auditory sense on notice. This material excluded, the instruction was proper as its remaining content was as much applicable to the driver as to plaintiff. (See *Shehtanian* v. *Kenny,* 156 Cal.App.2d 576, 579 [319 P.2d 699].)

In the circumstances of this case, it was prejudicial error to refuse the instructions proposed by plaintiff. "It is settled law that each party is entitled to have his theory of the case go to the jury, and requested instructions, which are proper in form and substance, should not be refused, merely because the trial court does not accept the theory upon which a party relies" (*Kelley* v. *City & County of San Francisco, supra,* 58 Cal.App.2d 872, 876 [137 P.2d 719]; *Cole* v. *Ridings,* 95 Cal.App.2d 136, 144 [212 P.2d 597]).

For the foregoing reasons the judgment is reversed.

Fourt, Acting P. J., and Shea, J. pro tem.,* concurred.

The petition of respondent City of Los Angeles for a hearing by the Supreme Court was denied December 2, 1959. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.