Wilbern B. PATTERSON, as parent, next friend and natural guardian of Wilbern David Patterson, a minor, and Mary Beth Patterson, Appellants,

v.

Bill L. CUSHMAN and Helen Cushman, Appellees.

No. 360.

Supreme Court of Alaska.

Aug. 3, 1964.

G. F. Boney, of Burr, Boney & Pease, Anchorage, for appellants.

Daniel A. Moore, Jr., of Plummer, Delaney & Wiles, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The plaintiff, Wilbern B. Patterson, brought this action as next friend on behalf of his minor son for injuries sustained by the latter as a consequence of the alleged negligent operation by the defendant, Helen Cushman, of an automobile maintained as a family car by herself and her husband, the other defendant. From a verdict and judgment of nonliability in favor of the defendants, the plaintiff prosecutes this appeal. Pertinent facts will be raised as they may be required for an understanding of each issue as it is being discussed in this opinion.

The first issue raised by the plaintiff concerns the trial court's refusal to strike the defendants' affirmative defense of contributory negligence and its subsequent treatment of the question of contributory negligence by children in its instructions to the jury. These instructions were quite lengthy and it would serve no useful purpose to set

them forth verbatim in this opinion. In essence they informed the jury that neither negligence[1] nor contributory negligence were ever presumed; that in order to prevail upon their defense of contributory negligence the defendants would have to prove the same by a preponderance of the evidence; and that any evidence of negligence on the part of the injured child proximately contributing to the accident and the resulting injuries would bar recovery by him.

The plaintiff complains that the instructions laid so much stress upon contributory negligence that the minor was deprived of a fair trial; and he contends that the court should have stricken the defense of contributory negligence, or at least have instructed the jury, as requested by him, that a child under seven years of age cannot as a matter of law be guilty of negligence or contributory negligence. In other words, he is saying that Alaska should adopt what has become known as the Illinois rule, or the rule of conclusive presumption, that

"[A] child under seven years of age is incapable of such conduct as will constitute contributory negligence, and the court may so declare as a matter of law * * *."[2]

The reason behind the rule seems to be that "a child under 7 years of age lacks the discretion, judgment and mental capacity to discern and appreciate circumstances of danger that threaten its safety."[3]

Arrayed against the proponents of the "Illinois Rule" are those jurisdictions which

have rejected the claim that some arbitrary age, such as four, five, six or seven, should be set below which a child must be conclusively presumed to be incapable of contributory negligence.[4] They recognize the presumption of incapacity but regard it as one which is rebuttable. Common sense is on their side for it dictates that there are other factors besides a child's age, e. g., judgment and experience, which must be considered in order to properly determine the child's capacity for contributory negligence. As stated by Judge Jayne in Hellstern v. Smelowitz:[5]

"It seems entirely reasonable to suppose that the capacity of an infant to understand and to avoid dangers to which it is exposed in a given set of circumstances does not depend so much upon the chronological age of the infant as upon the infant's psychological development."

"The ripening of the mental faculties of children in general must, we think, have been accelerated by the progressive enlargement of a child's scope of observations and experiences in our modern environment."

"Under the so-called Illinois rule a boy who is one day under seven years of age may be guilty of the most flagrant contributory carelessness and yet evidence of his exceptional precocity and breadth of judgment and experience cannot be introduced to over-

1. Negligence was defined by the court in its instructions to the jury as "the want of ordinary care; that is, the want of such care as an ordinarily reasonable and prudent person would exercise under like circumstances."

2. Romine v. City of Watseka, 341 Ill.App. 370, 91 N.E.2d 76, 79 (1950). For other cases following the "Illinois Rule," see Ward v. Music, 257 S.W.2d 516, 518 (Ky. Ct.App.1953); Walston v. Greene, 247 N.C. 693, 102 S.E.2d 124, 126 (1958).

3. Walston v. Greene, supra note 2. See also the dissenting opinion of Justice McAllister in Tyler v. Weed, 285 Mich. 460, 280 N.W. 827 (1938), in which he stated:

"[T]he age of seven years can be said to be the threshold over which a human being passes from the realm of imagination and dream to the world of reality and fact." 280 N.W. at 832.

4. Jones v. Wray, 169 Cal.App.2d 372, 337 P.2d 226 (1959); Ruggiero v. Mello, 333 Mass. 295, 130 N.E.2d 555 (1955); Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A.L.R. 1 (1936); Camardo v. New York State Rys., 247 N.Y. 111, 159 N.E. 879 (1928); other cases discussed in Annot., 77 A.L.R.2d 917, 924–25 (1961).

5. 17 N.J.Super. 366, 86 A.2d 265 (1952).

come the illusory presumption of baby-like puerility." [6]

We reject the Illinois rule of conclusive presumption and adopt for Alaska the view that a child of less than seven years of age is rebuttably presumed to be incapable of contributory negligence. As to such a child there are two issues to be decided: (1) Whether the child has the capacity to be contributorily negligent, and (2) whether he was in fact contributorily negligent. These issues might well both be jury questions unless fair minded men in the exercise of reasonable judgment could not differ on the inferences to be drawn from the evidence.[7]

With respect to the first issue mentioned in the preceding paragraph, the evidence in the instant case was such as to leave no doubt in a reasonable mind that the child was capable of some degree of care and of taking some precautions for his own safety. He knew the danger from automobiles and had been warned by his parents to watch out for vehicles and not to play in the streets. Under these circumstances the trial court would have had to rule as a matter of law that the child was capable of contributory negligence,[8] leaving for the jury only the issue of whether he was in fact contributorily negligent.

The trial court properly defined ordinary care as applicable to the child in this case by instructing the jury that

"A child is guilty of contributory negligence when he does something which an ordinary child of like age, intelligence, and experience would not do under the circumstances and conditions of a given case, or when he fails to take such precautions for his own safety as an ordinarily prudent child of like age, intelligence, and experience would

take under the same circumstances and conditions. * * *"

During the course of the trial the plaintiff called as a witness one Donald Redman who testified that immediately preceding the accident he saw the child playing—"walking with one foot on the sidewalk or curb and one down off the curb into the street"—and then stumbling out into the street and falling into or coming into contact with the right front fender of the defendant's car. Redman was then shown an unsworn written statement made by him one week after the accident to Air Force Police officers investigating the accident [9] from which the following portion was read into the record:

"I saw Mrs. Cushmans [*sic*] [defendant's] car driving less than three feet from the curb where this little boy was walking 'up and down'. I saw her car strike the child. I do not know whether her right front bumper struck the child, or whether her right front fender struck the child, but I do know that I saw the right front corner of the car strike the boy * * *."

The witness readily admitted making the statement and explained that in it he had failed to say how the boy got off the curb. On cross examination he identified an earlier written statement, given by him to the Air Force Police only one day after the accident, in which he related:

"I was following the car involved in accident, she [the defendant, Helen Cushman] was traveling about 15 MPH when this small boy stumbled and fell from curb into the car. The boy was walking with one foot on curb and other foot in gutter when he stumbled and fell into on coming traffic; the car had no way of avoiding the accident."

6. Id. 86 A.2d at 270–271.

7. Grace v. Kumalaa, 386 P.2d 872, 877–78 (Hawaii 1963); Dixon v. Stringer, 277 Ky. 347, 126 S.W.2d 448, 452 (1939).

8. Dixon v. Stringer, supra note 7.

9. The accident in question occurred on Elmendorf Air Force Base, adjacent to the City of Anchorage. The parties involved were all Air Force personnel and members of their families.

The plaintiff tried twice but without success to get admitted into evidence as a prior inconsistent statement, the written statement made by the witness Redman six days after the accident. The defendants objected to the admission of the statement on the grounds that "the witness is the best evidence," that he "testified as to what he actually observed" and that the statement did not add or detract from anything explained by his testimony. The plaintiff contends that the statement was admissible for purposes of impeachment and that it was error for the court to exclude it. We do not think so.

Redman admitted making the statements contained in the writing in question. That ended the inquiry. The material portions of the statement had been read to the jury, leaving no need for further proof on the subject.[10] The written statement would not have contradicted Redman any more than his admission had already done.[11]

The third issue raised by the plaintiff is that the trial court erred in giving its instruction No. 7 which reads:

"In the present action certain testimony [of the witness Owczarski, who was apparently unavailable at the time of trial] had been read to you by way of deposition.[12]

"You are instructed that you are not to discount this testimony for the sole reason that it comes to you in the form of a deposition. It is entitled to the same consideration, the same rebuttable presumption, that the witness speaks the truth, and the same judgment on your part with reference to its weight, as is the testimony of witnesses who have confronted you from the witness stand."

The plaintiff argues that the instruction was erroneous because it overlooked the value attached to a witness' demeanor in court and in effect told the jury that they should give the same weight to evidence produced by deposition as they would to evidence coming from the witness testifying in open court. The defendants reply that this is not so, for the instruction merely directed the jurors that they must in weighing the testimony of a witness from the stand apply their individual judgment to the value of his testimony and demeanor and that they must apply no less amount of judgment to the testimony of a witness presented by way of deposition. We consider the defendants' interpretation of the instruction to be correct and one that any reasonably intelligent jury would have made.[13] This instruction coupled with the other instructions given by the court for

10. Webb v. City of Seattle, 22 Wash.2d 596, 157 P.2d 312, 319, 158 A.L.R. 810 (1945). See also 4 Jones, Evidence § 937 (5th ed. 1958); McCormick, Evidence, § 37, at 68 (1954).

11. Babbitt v. Say, 120 Ohio St. 177, 165 N.E. 721, 723 (1929).

12. In his brief the plaintiff singles out the following testimony given by the deponent Owczarski regarding a conversation he had with the injured child in the x-ray room at the hospital shortly after the accident:

"A Yes, I asked him what he was doing in the street and he said he was coming home from the show and walking with one foot on the curb and one foot on the street and flipping a coin which landed out in the street and he ran after it. I asked him if he looked for any cars and he said no."

13. For appellate court decisions approving instructions relating to the consideration to be given by the jury to depositions of witnesses, see In re Pohlmann's Estate, 89 Cal.App.2d 563, 201 P.2d 446, 452 (1949); Newman v. Los Angeles Transit Lines, 120 Cal.App.2d 685, 262 P.2d 95, 102 (1953), in which the court inferentially approved an instruction that "the jury are not to discount testimony received by way of deposition for the sole reason that it was in [the] form of a deposition;" that the deposition "is entitled to the same rebuttable presumption of verity and the same judgment of the jury with reference to its weight as that of any witness appearing on the stand"; Coburn v. Moline, E. M. & W. Ry., 243 Ill. 448, 90 N.E. 741, 743 (1909); Olcese v. Mobile Fruit & Trading Co., 211 Ill. 539, 71 N.E. 1084, 1087 (1904); Pyle v. McNealy, 227 Mo.App. 1035, 62 S.W.2d

judging the credibility of witnesses left to the jury alone the determination of how much weight and credibility should be attached to the testimony of the several witnesses, whether testifying orally or by deposition.

■ A second objection of the plaintiff to instruction No. 7 is that it amounts to a comment by the trial court upon the weight of the evidence and, therefore, violates Civil Rule 51(b) set forth in the margin.[14] We fail to read any such meaning into the instruction as given. If the court had instructed the jury that they must give the same weight to deposition evidence as to oral testimony by a witness in open court, the plaintiff might have had cause for complaint.[15]

For his next major issue the plaintiff has mingled four specifications of error and treated them under the single charge that the trial court committed prejudicial error by failing to instruct the jury concerning the standard of care owed by the defendant Helen Cushman to the plaintiff's minor child.[16] The plaintiff contends that, since it was established at the trial that children were playing in the area of the accident at the time it occurred,[17] the court should have instructed the jury that where children

are known or may be reasonably expected to be in the vicinity, the driver of a car must exercise greater care for the protection of such children than would be required of him in the case of persons of mature years.

While there are decisions which hold that a higher degree of care is required toward children than toward adults,[18] we believe that the better view is that expressed by Dean Prosser as follows:

"Although the language used by the Courts sometimes seems to indicate that a special standard is being applied, it would appear that none of these cases should logically call for any departure from the usual formula. What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding a greater amount of care.[19]"

■■ Under this view that there are no degrees of care as a matter of law and in the absence of any statute to the contrary, the trial judge need only instruct the jury that the defendant is required to exercise toward the plaintiff ordinary care under the

---

921, 923–924 (1933); Hillis v. Kessinger, 88 Wash. 15, 152 P. 687 (1915).

14. Civil Rule 51(b): "The court shall instruct the jury that they are the exclusive judges of all questions of fact and of the effect and value of evidence presented in the action. *, * *"

15. See Central of Georgia Ry. v. Holmes, 223 Ala. 188, 134 So. 875, 876–77 (1931).

16. The specifications of error referred to in the opinion above are Nos. 3, 4, 7 and 12. No. 3 concerned the failure of the trial court to give the plaintiff's proposed instruction No. 1 relating to the duty of the defendants to maintain a proper lookout. No. 4 discussed the higher duty of care owed by persons dealing with children. No. 7 covered the failure of the trial court to give plaintiff's proposed instruction No. 8 regarding the higher duty of care required of an operator of a motor vehicle toward children. No. 12 charges error on the part of the court

for failing to amplify its instruction No. 15 by mention of the special obligation of a motor vehicle operator "to look out for children playing in or near the streets."

17. The record leaves no doubt that there were quite a few children playing in the vicinity of the accident at the time it occurred, although Helen Cushman claims that she did not see them until right after the accident.

18. Beliak v. Plants, 84 Ariz. 211, 326 P. 2d 36, 39–40 (1958); Guyton v. City of Los Angeles, 174 Cal.App.2d 354, 344 P.2d 910, 913 (1959); Audette v. Lindahl, 231 Minn. 239, 42 N.W.2d 717, 719 (1950); Le Doux v. Martinez, 57 N.M. 86, 254 P.2d 685, 687–89 (1953); Kroft v. Grimm, 225 Or. 247, 357 P.2d 499, 502 (1960); Gabbard v. Knight, 202 Va. 40, 116 S.E.2d 73, 77 (1960).

19. Prosser, Torts, 147–48 (2d ed. 1955).

circumstances.[20] By its instruction No. 15 the trial court informed the jury:

"In order to exercise ordinary care one must employ his faculties in order to observe and discover the danger, if the danger is visible and obvious, or if the surrounding circumstances and conditions are such as to indicate the presence of danger to a reasonable or ordinarily careful and prudent man, and a failure to discover such visible and obvious danger, when their attention is expected or should be given to the road ahead, amounts to the want of ordinary care.

"Every driver is under obligation to provide against all such dangers to others as he, under the circumstances, ought reasonably to expect might probably arise.

"Independently of any other rule or statute, it is the duty of every motor vehicle operator to keep a careful lookout ahead and to the sides in order to see any other traveler or vehicle which may be within or approaching his line of travel, and it is his duty to take all reasonable care and precaution to avoid collision with any other traveler or vehicle, and to that end to limit his rate of speed and so control the movement of his vehicle that he is not likely to endanger and does not endanger the property, life, or limb of any person."

The foregoing instruction was preceded by instruction No. 12 which defined negligence and ordinary care as those terms applied to the defendant.[21] We find that these two instructions provided the jury with a sufficient test for negligence under the facts of this case. The record discloses that from the time that counsel for the parties made their opening statements and thenceforth throughout the entire trial, the jury was made fully aware that the case involved a six-year old child playing on the street when the accident occurred and that children because of their impulsive tendencies create a dangerous situation when playing in the area along a highway where vehicles travel. To have made special mention of these circumstances in the instructions would have accomplished no useful purpose in this case.[22]

Along with its instructions, the court asked the jury to answer the following special interrogatories, which were answered as indicated:

"1. Was the plaintiff Wilbern David Patterson guilty of contributory negligence?

Yes
_____
(Yes or No)

---

20. Hughes v. MacDonald, 133 Cal.App.2d 74, 283 P.2d 360, 365 (1955); Watson v. Riggs, 79 Ga.App. 784, 54 S.E.2d 323, 325 (1949); Mohan v. New England Tel. & Tel. Co., 333 Mass. 766, 129 N.E.2d 619 (1955); Quarcini v. Blackwell, 13 A. D.2d 616, 213 N.Y.S.2d 623, affirmed 10 N.Y.2d 843, 221 N.Y.S.2d 730, 178 N.E. 2d 432 (1961); Alvarez v. Paulus, 8 Utah 2d 283, 333 P.2d 633, 634 (1959).

21. The following is the full text of instruction No. 12:

"In his complaint in this action and by his testimony, plaintiff claims that he was injured as a result of the negligence of the defendant. All questions of negligence or absence of negligence are for your determination.

"In this connection, it is necessary to know what is meant by negligence. Negligence means the want of ordinary care; that is, the want of such care as an ordinarily reasonable and prudent person would exercise under like circumstances, and so, in determining whether or not the defendant was negligent on the occasion in question, you must determine whether he did or did not exercise ordinary care in what he was doing or attempting to do at or immediately before the time of the accident; that is to say, whether he did or did not exercise such care as an ordinarily reasonable and prudent person would exercise under like circumstances. If he failed to exercise such ordinary care, he was negligent; but if he did exercise such ordinary care, then he was not negligent."

22. See Hughes v. MacDonald, supra note 20.

"2. Was the defendant guilty of negligence?

No

_____

(Yes or No)

"3. If you find the defendant guilty of negligence, was that negligence the proximate cause of the injury received by the plaintiff?                              _____23

_____

(Yes or No)"

This brings us to the next question raised by the plaintiff, which is: Having elected to submit the foregoing interrogatories to the jury, did the trial court err in refusing to submit certain additional interrogatories requested by the plaintiff? One of the requested interrogatories was in three parts as follows:

"(A) Did Mrs. Cushman fail to keep a proper lookout for children on April 28, 1962, just prior to the accident?

"(B) If your answer to the previous interrogatory is in the affirmative, do you find that her failure to keep a proper lookout for children was a proximate cause of the plaintiff's injury?

"(C) If your answer to previous interrogatory is in the affirmative, in what amount has the plaintiff been damaged?"

The plaintiff also requested that the jury be asked to answer the interrogatory, "Was the six year old Plaintiff, WILBERN DAVID PATTERSON, capable of being negligent on April 28, 1962?" 24

The plaintiff contends that, since he had attempted to prove that the defendant, Helen Cushman, had failed to maintain a proper lookout and that the injured child was incapable of negligence due to his tender years, those issues were determinative of the ultimate questions of primary and contributory negligence in this case and should have been submitted to the jury by way of special interrogatories. By the court's failure to give the requested instructions, the plaintiff claims, the jury's answers to the interrogatories given became immaterial and, more important, the theory of the plaintiff's case was never submitted to the jury and there was no way of telling whether or not the general verdict resulted from the jury's disobedience to the court's instructions.

■ Our Civil Rule 49(c), like Rule 49(b) of the Federal Rules of Civil Procedure, provides that a general verdict *may* be accompanied by interrogatories *upon one or more issues* of fact, the decision of which is necessary to a verdict.25 The number

23. The jury were told that "if your answer to question No. 2 is 'no' then you may draw a line in the space for No. 3. If your answer to No. 2 is 'yes' then you must answer question No. 3."

24. A third requested interrogatory of the plaintiff related entirely to the question of damages, an issue which the jury never reached because of its general verdict for the defendants. Under the circumstances we need not consider the trial court's refusal to submit the interrogatory to the jury.

25. Civil Rule 49(c) reads as follows:
"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration

and form of the interrogatories rested in the sound discretion of the trial judge. We cannot say that he abused his discretion or committed error, for in our opinion he presented to the jury fairly the issue as to liability by the three interrogatories which he elected to submit and by his instructions 13–A and 15 regarding the child's capacity and the duty of a motorist to maintain a proper lookout.[26]

At the conclusion of all the evidence the plaintiff moved for a directed verdict on the ground that as a matter of law the evidence demonstrated beyond any reasonable doubt that the defendant, Helen Cushman, was negligent in failing to keep a proper lookout. As a second ground for his motion, he urged that the child in the case being under seven years of age was conclusively presumed, as a matter of law, to be incapable of negligence or, in the alternative, that, if the presumption of incapacity is held to be rebuttable, the presumption had not been overcome in this case. After the jury had brought in the verdict for the defendant, the plaintiff moved for judgment notwithstanding the verdict. Both motions were denied and the plaintiff charges this as error but relies only on the first ground

urged below in support of the two motions directed at the verdict.

In his brief on appeal the plaintiff has marshalled eight facts from which, he alleges, the court should have concluded that Helen Cushman did not maintain a proper lookout for the child involved and was thereby negligent as a matter of law. Even though these facts, which are set forth in the margin below,[27] were undisputed, as the plaintiff claims, they were not dispositive of the issue of primary negligence, for there still remained the element of proximate cause.

■ The child testified that the car hit him as he was walking along with one foot on the curb and one foot on the street. The only two eye witnesses to the accident, however, testified that the child, hopping along with one foot on the curb and one foot in the street, lost his balance when the one foot missed the curb, stumbled and fell into the side of the right front fender of the defendant's car which was traveling at about fifteen miles per hour about three to four feet out from the curb. Helen Cushman herself stated that she had no knowledge of the child's presence until she heard a "real sharp thud" on the right hand side of her

of its answers and verdict or may order a new trial."

26. For cases holding that the number and form of issues submitted by way of special interrogatories, if they, along with the instructions to the jury, fairly present the ultimate questions of fact to be determined, is a matter resting in the sound discretion of the trial judge, see Norfolk Southern Ry. v. Davis Frozen Foods, 195 F.2d 662, 664, 666 (4th Cir. 1952), cert. denied 346 U.S. 824, 74 S. Ct. 41, 98 L.Ed. 349 (1953); Travelers Ins. Co. v. Truitt, 280 F.2d 784, 789 (5th Cir. 1960); Texas & Pac. Ry. v. Griffith, 265 F.2d 489, 493–494 (5th Cir. 1959). Contra: Gelfand v. Strohecker, 150 F.Supp. 655, 662–63 (N.D.Ohio 1956), aff'd 243 F.2d 797 (6th Cir. 1957); Tillman v. Great Am. Indem. Co., 207 F.2d 588, 593 (7th Cir. 1953).

27. The facts claimed by the plaintiff to be undisputed with respect to the failure of Helen Cushman to maintain a proper lookout were as follows:

"1. The defendant, Helen Cushman, did not observe the infant plaintiff at the time she was driving her vehicle.

"2. The defendant, Helen Cushman, did not observe any other children in the area before the impact.

"3. Quite a few children were walking on the sidewalk and lawns adjacent to Juniper Street [on which the accident occurred] and moving in the direction of the accident and within the unobstructed view of the defendant.

"4. The infant plaintiff was in plain view of Mrs. Cushman prior to the accident.

"5. After the accident, Mrs. Cushman saw many children in the area.

"6. Juniper Street is a four-lane street and Mrs. Cushman was driving in the right lane.

"7. The children were walking and playing in a residential area adjacent to Juniper Street.

"8. Mrs. Cushman lived in the general area and was familiar with its residential character."

car. She stopped the car, got out and went back around the car where she found the injured child lying with his feet by the rear fender.

Under such a state of the record, it cannot be said that the probative facts as to Helen Cushman's negligence, assuming that the jury's finding that she was not negligent is incorrect, being the proximate cause of the accident are undisputed and that reasonable minds could draw but one inference from them. The issue here turned on controverted facts and the credibility of witnesses and was properly left to the jury to decide.[28]

Lastly, the plaintiff charges that the trial court erred in awarding court costs to the defendants. The factual situation in that respect as to events transpiring in 1963 is this: The verdict of the jury was docketed on February 1, without any direction by the court as to the entry of a judgment. On February 5 the defendants as the prevailing party filed their cost bill, dated February 1, which was noticed for hearing and heard before the clerk of the court on February 6. The plaintiff objected to the cost bill on several grounds, whereupon the defendants withdrew their cost bill and decided to submit another one at a later date.

On February 8, after hearing oral argument by counsel on the subject of attorney's fees, the trial judge allowed such fees in favor of the defendants, directing that a judgment be prepared accordingly and indicating that he would sign and have it entered that very day. A formal judgment was duly submitted by the defendants, approved as to form by counsel for the plaintiff, and filed. It reads in pertinent part as follows:

"IT IS ORDERED, that the plaintiffs take nothing, that the action is dismissed on the merits, and that the defendants recover from the plaintiffs, Wilbern B. Patterson and Wilbern David Patterson [the minor], *their costs* and attorneys fees in the amount of $875.00 and recover from the plaintiff, Mary Beth Patterson [the minor's mother], attorneys fees in the amount of $25.00." [Emphasis supplied.]

On February 15, the defendants served and filed a second cost bill for $373.12, covering such items as service fees, witness fees, and charges for reporting and transcribing depositions. These claimed costs were objected to by the plaintiff on the ground that they had been waived by the form of judgment submitted to the court for execution on February 8 and on the further ground that the bill had not been timely served and filed. As to the latter ground, the plaintiff pointed out that Civil Rule 79(a) requires that a party entitled to costs shall serve a cost bill on the other party "[w]ithin 10 days after the entry of judgment." He then argued that the general verdict constituted the judgment is this case and having been docketed on February 1, it caused the service and filing of the February 15 cost bill to be untimely.

On March 26 the clerk of the court taxed the costs in the amount of $257.72. That amount was thereafter approved by the trial court and included in an "Amended Judgment on General Verdict" executed and filed on April 18, pursuant to hearing on a motion of the defendants, filed on April 3 under Civil Rule 60(b),[29] for relief from the judgment entered on February 8. Relief from the prior judgment was sought for the reason that plaintiff's counsel had inadvertently included the word "costs" in the judgment and

---

28. Capital Transit Co. v. Bingman, 94 U.S. App.D.C. 75, 212 F.2d 241, 242 (1954); American Auto. Ins. Co. v. Albert, 102 F. Supp. 542 (D.Minn.1952); Drews v. Mason, 29 Ill.App.2d 269, 172 N.E.2d 383, 385 (1961); 2B Barron & Holtzoff, Federal Practice and Procedure § 1079 (1961). Cf. Ahlstrom v. Cummings, 388 P.2d 261 (Alaska 1964).

29. Civil Rule 60(b) provides in part as follows:
   "On motion and upon such terms as are just, the court may relieve a party

failed to leave a blank space for the insertion of costs to be later taxed.

In the meantime, on March 8 with all parties represented, the court had held a hearing on the plaintiff's motion for judgment notwithstanding the verdict and in the alternative for a new trial. The motion was denied on March 8 at the conclusion of the hearing, and on March 13 the plaintiff filed notice of appeal from the judgment of February 8 and the order last mentioned.

Preliminarily to sustaining the costs as allowed by the clerk, the trial court had stated from the bench:

> "[T]he records show that the jury returned their verdict in open court on February the 1st. The court has listened to the transcription of the testimony and the court at that time did not enter an order staying the entry of the judgment until the formal judgment was entered; therefore under the ruling of the Supreme Court [30] the [trial] court * * * is going to hold that the judgment was entered on February the 1st, that the filing of cost bill by the defendant in this case was timely, that since the record indicates no adverse ruling to the defendant by the Clerk on the first cost bill, although another more comprehensive one is filed on the 14th, the court in the absence of any ruling by the Clerk is going to find that it was timely filed. Now the court will hear argument as to the items."

The plaintiff concedes that a good argument can be made that the judgment was really entered in this case on February 8. However, he contends that, if the trial judge correctly interpreted our decision in Vogt v. Winbauer [31] to mean that entry of the verdict in the civil docket on February 1 was tantamount to entry of judgment on the verdict, then the cost bill of February 15 was filed too late under the ten-day rule and should have been disallowed. In this connection the plaintiff maintains that the second cost bill cannot be treated as an amendment of the cost bill filed on February 5, because the latter was withdrawn by the defendants.

The record does not disclose the exact wording of the clerk's entry in the civil docket on February 1 regarding the verdict. However, we do not consider that important here, because in the instant case the jury returned a general verdict accompanied by answers to interrogatories. In such a situation the following provision contained in Civil Rule 58 is controlling:

> "[T]he court shall *direct the appropriate judgment to be entered* upon a special verdict or *upon a general verdict accompanied by answers to interrogatories* returned by a jury pursuant to Rule 49." [Emphasis supplied.]

Since the court gave no directions on February 1 for the entry of a judgment on the general verdict and answers to interrogatories returned by the jury but waited until February 8 to perform that act by directing that a formal judgment be prepared, executed and entered as of the latter date, we conclude that the formal judgment docketed on February 8 marked the commencement of the ten-day period for the service and filing of a cost bill

---

or his legal representative from a final judgment, order, or proceeding for the following reasons:

> "(1) mistake, inadvertence, surprise or excusable neglect. * * *"

30. The reference of the trial court in the quotation above to a "ruling of the Supreme court" is to our decision in Vogt v. Winbauer, 376 P.2d 1007 (Alaska 1962). In that case we held that the

thirty-day period within which notice of appeal must be given by the appellant begins to run on the day when *judgment on the verdict* is noted by the clerk in the civil docket and not on the day when a formal written judgment, signed by the trial judge, is filed and entered in the civil docket.

31. Supra note 30.

and, therefore, the bill filed on February 15 was timely.[32]

The plaintiff objects to certain items taxed as costs in the cost bill filed on February 15 but cites us to no authority in support of his position. We have examined the bill and the affidavit attached thereto and have considered the items allowed by the clerk and later confirmed by the trial judge. We find that the cost bill was submitted in proper form and we perceive no error in the rulings below on the items taxed to which objection has been made.

▮ Finally in connection with the controversy over the allowance of costs in this case, the plaintiff contends that the trial court erred in entering the April 18 amended judgment on the general verdict, after the appeal had already been docketed in the state supreme court. As noted earlier the defendants claimed relief from the judgment of February 8 because their counsel had inadvertently and by mistake included therein the word "costs" instead of leaving a blank space for the insertion of costs to be later taxed.

The relief thus sought is provided for by Civil Rule 60(a) which reads:

"Clerical mistakes in judgments, orders or other parts of the record and *errors therein arising from oversight or omission* may be corrected by the court at any time of its own initiative or on the motion of any party * * *. During the pendency of an appeal or petition for review to the supreme court, *such mistakes may be so corrected before the record is filed in the supreme court,* and thereafter may be so corrected with leave of the supreme court." [Emphasis added.]

While notice of appeal in this case was filed on March 13, 1963, the record on appeal was not filed in the supreme court until January 7, 1964. So on April 18, 1963, when the trial court entered the amended judgment in this case, it still had the authority to do so without leave of the supreme court.

Finding no error, we affirm the judgment as amended.

---

32. We call attention of the bench and bar to the fact that in Vogt v. Winbauer, supra note 31, the jury had returned a general verdict involving no answers to interrogatories. Under such circumstances only the first clause of Civil Rule 58 applies by its provision that "unless the court otherwise directs * * * judgment upon the verdict of a jury shall be entered forthwith by the clerk."