## ASGILL v. UNITED STATES.

### No. 3292.

Circuit Court of Appeals, Fourth Circuit.

Aug. 1, 1932.

M. J. Fulton, of Richmond, Va. (Holmes Hall, of Richmond, Va., on the brief), for appellant.

C. E. Gentry, Sp. Asst. U. S. Atty., of Charlottesville, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va. on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge.

This is an appeal pursued in forma pauperis. The transcript of record and brief of appellant's counsel are typewritten. Part of the testimony is in single space and other portions in double space, and the number of erasures and interlineations appearing in the transcript all together contribute to considerable difficulty in its consideration. We call attention to these facts for the purpose of illustrating the lack of care with which records of this kind are frequently presented and for the purpose of emphasizing the propriety of having the court furnished with neat and accurate records.

The case was tried in the District Court for the Eastern District of Virginia, at Richmond, beginning July 7, and being concluded on July 11, 1931. The indictment in appropriate words in a single count charged Sarah Asgill, hereinafter referred to as the defendant, with having committed the crime of perjury by giving certain false testimony in a civil case tried on October 3, 1928, in the United States District Court for the Eastern District of Virginia, at Richmond, the swearing of the witness, the facts sworn to and charged in the indictment to have been material, false and known by the defendant to be false, being elaborately set out. After her conviction and sentence, the defendant brought this appeal upon numerous exceptions which need not be here set out in detail. They involve substantially but five issues: (1) Whether the demurrer to the indictment should have been sustained; (2) the plea of double jeopardy; (3) whether defendant's motion for a directed verdict should have been sustained because of insufficiency of the evidence; (4) whether the trial judge erred in admitting certain evidence; (5) whether the trial judge erred in excluding certain other evidence sought to be produced and used in cross-examination.

1. While the demurrer to the indictment purports to set out four objections, these need not be set out in detail. The sufficiency of the indictment is challenged because of indefiniteness and uncertainty and because of its failure to inform the demurrant of the facts, circumstances, and ingredients of the offense sought to be charged. This is completely answered by what has been said above. It is also claimed that the indictment is defective because of misjoinder of parties and of separate, distinct, and unrelated offenses. Counsel did not argue the exceptions to overruling the demurrer, and we are at a loss to understand how the challenge to the indictment was seriously presented. The defendant alone was included in the indictment, and there was but one charge of perjury in a single particular. These exceptions are overruled.

2. The claim of double jeopardy is based upon the fact that in another case heard at the same term and in the same court, the defendant was tried and convicted of the crime of conspiracy to defraud the United States. Asgill et al. v. U. S., 60 F.(2d) 780. In that case the false swearing, for which defendant was convicted in the instant case, was set out as one of the overt acts committed in carrying out the purposes of the conspiracy. It has been uniformly held that the liability for conspiracy is not taken away by its success; that is to say, by the accomplishment of the substantive offense at which the conspiracy aims. In the conspiracy case the purpose was alleged to be that of defrauding the United States. The false swearing was only the means of accomplishing that purpose. The crime of conspiracy is an independent crime condemned by the statute for the primary purpose of discouraging organized and concerted efforts by two or more people to violate the law. The case of Heike v. United States, 227 U. S. 131, at page 144, 33 S. Ct. 226, 57 L. Ed. 450, at page 455, Ann. Cas. 1914C, 128, is conclusive of this question. See, also, Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136; Steigleder v. United States (C. C. A.) 25 F.(2d) 959; Hostetter v. United States (C. C. A.) 16 F.(2d) 921.

3. The exceptions to the court's overruling the motion for a directed verdict are without merit and must also be overruled. The government produced a number of witnesses who testified to the effect that defendant's testimony was false as alleged in the indictment, the testimony of these witnesses relating to matters peculiarly within the knowledge of appellant, and, if true, as indicated by the verdict of the jury, showing all the facts necessary to establish the charge. It was shown that the defendant was properly sworn in the civil case referred to in the indictment, and every material element necessary to establish the crime was supported by testimony.

4. While the exceptions set forth numerous grounds upon which it is alleged that the court erred in admitting evidence, none of these grounds are meritorious. Among other things, it is alleged that the court erred in admitting evidence to the jury before the corpus delicti had been proved, and that evidence was introduced as to acts both before and after the alleged offense and for acts not alleged in the indictment. The exceptions are rather general, but, waiving any objection thereto for that reason, it appears from the record that the corpus delicti was properly proved and the testimony was in proper order; that all the facts testified to were so related to the main charge as to make them material. These exceptions are overruled.

 5. The remaining exceptions relate to the exclusion of a certain letter written, or purporting to have been written, by Alice White Allen, a witness for the government, and the refusal of the court to require the production of other letters written or sponsored by her in connection with her claim for insurance, at the request of defendant's counsel for the purpose of cross-examination. The consideration of this question requires a review of certain facts disclosed by the testimony. The indictment charges the defendant with having given certain false testimony in the trial of a suit upon a war risk insurance policy, brought by Alice White Allen, as the common-law wife of a deceased veteran, against the United States. It appeared from the testimony both in that case and the instant case that one James Allen entered the service of the United States in the World War, applied for and received from the government an insurance policy in the sum of $10,000, payable to the said Alice White Allen, as his common-law wife. After his death, she presented to the Veterans' Bureau her claim for the payment of this policy. She was then living in Virginia. In reply, the Bureau called her attention to the fact that the state of Virginia did not recognize common-law marriages, but that certain other states, including New York, did recognize such. Later on suit was filed by Alice White Allen upon this policy, and, in order to prevail therein, it was necessary for her to prove a common-law marriage with the insured. She then claimed and swore, as she had already claimed in various written communications to the Bureau and others, that she had at one time lived with James Allen in the state of New York as his common-law wife. In that suit, the defendant testified that she

had known the parties in the state of New York, and that they had lived there as man and wife as claimed by the plaintiff, Alice White Allen. Some time after judgment had been rendered in her favor and the money collected thereon by the plaintiff, the government authorities made an investigation, came to the conclusion that no common-law marriage existed, that the claim was therefore spurious, and, after a certain amount of somewhat gruelling examination of Alice White Allen while she was under arrest and had been imprisoned for several days, she made a confession that her claim was false, and thereupon she was, along with the defendant and a number of others, indicted upon the charge of a conspiracy to defraud the United States government. This case was tried at the same term and in the same court as the instant case. In the conspiracy case, Alice White Allen entered a plea of guilty, and was used as a witness against her codefendants. She likewise testified in the instant case, being introduced as the first witness for the government. On her direct examination she first stated that she had never written a letter to the government, claiming that she "doesnt read or write," but that she "authorized one Reverend Hill to write anything he saw fit to the Government for her benefit." She afterwards admitted her signature to various letters, and upon inspection of one of them admitted that she could read it. Her testimony was contradictory, and she swore without hesitation that her claims and her former testimony were false. She stated, among other things, that, when she first made application to the government for payment of her insurance, she went to a lawyer in Petersburg, whom she thought was Lawyer Mann (Ex-Governor Mann). She said that she carried him the policy, but that he said "he would not try to do anything and that he would not write the Government about it." Thereupon, for identification, she was shown a letter addressed to the Treasury Department, Bureau of War Risk Insurance, by Mr. Mann. Before this witness concluded her testimony in chief, the defendant's counsel had called upon the government to produce certain letters written by the witness, addressed to the Bureau of War Risk Insurance or to the Treasury Department or to the Assistant Director in charge of compensation and insurance claims. The government's counsel promised to produce them, whereupon the defendant reserved the right of cross-examination of Alice White Allen, evidently awaiting production of these letters for that purpose. They were subsequently

brought into court, but, after further consideration, the court refused to require their production, and denied the plaintiff the right to introduce any of these letters in evidence. Counsel for the government argues, among other things, that defendant had no right to the use of these letters because no proper or timely demand was made upon the government for their production. This contention is without merit, since it is shown that the letters were in court and in the hands of the opposite party. In the presentation of defendant's evidence, Maggie Hill was called as a witness, and testified that she lived in Petersburg and knew Alice White Allen since the witness could remember; that Alice had been to her home about twice a week, the last time being on June 18, 1931, at which time Alice told witness' father, B. J. Hill, to write to Thomas A. Williams (one of the counsel in the war risk insurance case), and that he (Hill) dictated to the witness in the presence of Alice a certain letter which was signed by Alice, relative to a threat by one of the government agents that he would stop payment of checks to Alice and her children unless she would tell about paying Thomas for helping Williams. Government's counsel objected to the introduction of this and other letters above referred to, and the objection was sustained and the defendant excepted. This testimony was in flat contradiction of Alice's testimony that she did not know what Hill had written in the letters and that she signed them without reading, and its exclusion was error.

■ Discussing the refusal of the court to require the production of certain letters above referred to for the purpose of cross-examination, counsel for the government earnestly contends that an inspection of these letters discloses that, if produced, they would only serve the purpose of showing that Alice White Allen had repeatedly said that she was the common-law wife of James Allen, which was not disputed. This assumes that the exploratory nature of the cross-examination must have been limited to the consideration of that fact alone. It excludes the idea that lies at the bottom of all cross-examination, to wit, that it is designed, not only to develop the facts of a case, but to test the witness in matters of recollection, of prejudice or bias, and of truthful statement. The witness had denied a knowledge of the contents of the letters written in the very case now under consideration. She was an important witness for the government, and the defendant was entitled to the fullest opportunity to balance fact against fact, to weigh the testimony previously given against the testimony in the instant case, and, if possible, to ferret out every detail of the motive which induced her to change her former testimony and to testify as she did against the defendant. In the recent case of Alford v. United States, 282 U. S. 687, 51 S. Ct. 218, 220, 75 L. Ed. 624, Mr. Justice Stone has outlined with great clearness the law applicable to this issue. In that case it is shown that the cross-examination of a witness is a matter of right; that it is permissible thereby to identify the witness with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood; that counsel cannot know in advance what pertinent facts may be elicited on cross-examination which, for that reason, is necessarily exploratory; and that the rule that the examiner must indicate the purpose of his inquiry does not in general apply. It is stated to be the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop and that prejudice ensues from the denial of an opportunity to place the witness in his proper setting and put the weight of his testimony and its credibility to a test. Among other things, the court said: "The purpose obviously was not, as the trial court seemed to think, to discredit the witness by showing that he was charged with crime, but to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution." These exceptions must be sustained.

■ In concluding its instructions to the jury, the court said: "The court charges the jury that if they believe beyond a reasonable doubt from the evidence in this case that Alice White Allen and James Allen lived together in New York as husband and wife at any time prior to his joining the Army, you should acquit the defendant, even though you believe from the evidence that they did not live there between May and October, 1913. The exact date is not material, if you are satisfied they did live in New York City as man and wife at any time prior to his joining the United States Army. I charge you, gentlemen of the jury, a false statement made under oath must be known to be false at the time it is made." Strange to say, no excep-

tion was noted to this portion of the charge, which referred to the one fundamental fact on which the indictment was based. Summing up as it did the final pronouncement of the court, there was placed upon the defendant the necessity of proving her defense beyond a reasonable doubt. The law had been previously expounded correctly in the charge, and the instructions quoted were evidently an inadvertence. The error should have been called to the attention of the court so as to permit a correction in accordance with previous instructions. Since, however, no exception was taken, this court is not called upon to pass upon that question. Attention is directed to it in order to emphasize the harmful effect of excluding the letters referred to and the denial of defendant's privilege of cross-examination of Alice White Allen with reference to them.

For the reasons above stated, the judgment must be, and is, reversed.

Reversed.