(No. 35345.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FLOYD WILLIAMS, Plaintiff in Error.

*Opinion filed September 22, 1961.*

IRWIN D. BLOCH, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

This case is here upon a writ of error brought by the defendant, Floyd Williams, to review a judgment of the criminal court of Cook County finding defendant and one Joseph Calhoun guilty of the crime of unlawfully selling narcotic drugs. Calhoun's conviction was affirmed by us in *People* v. *Calhoun*, 22 Ill.2d 31, and on the present writ of error we are concerned only with the defendant Williams's conviction.

The defendant first contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt. A complete statement of the evidence is contained in the *Calhoun case* and we will not repeat it here, except insofar as it is necessary for a proper understanding of the issues in this case. The evidence showed that one Jacqueline Hill, a narcotics addict, was given a sum of money with which to buy narcotics in an attempt to obtain the arrest and conviction of the sellers of the narcotic drugs. Before attempting to buy the narcotics her clothing was searched by police officers and her person was searched by a police matron. No narcotics were found. After making an unsuccessful attempt to purchase narcotics at one address she proceeded in the company of the officers to 28 North Ogden Avenue. She entered the building and went up the stairs and a few minutes after she had entered the officers followed her.

They met her on the stairs as she was coming down from the third floor and she handed the officers a package which was later found to contain heroin. At about this time the defendant Williams came down from the fourth floor to the third floor and in the presence of the defendant, the officers asked Jacqueline if he was the man from whom she had bought the stuff and she replied that he was. The defendant said nothing in the face of this accusation. After Williams was arrested the officers saw Calhoun standing near a window in the bathroom and saw him throw some keys and currency out the window. The officers later recovered both the keys and the money and found that the money which Calhoun had thrown out the window was the same money which had been given to Jacqueline by the officers for the purpose of purchasing narcotics. The keys were found to open a door to an apartment on the fourth floor in which narcotics were found.

Jacqueline made and signed a statement in the presence of the defendant and Calhoun at the police station in which she said that she gave the defendant $10 and he left the room and returned in a few minutes with the "stuff." Although the defendant was present when she made this statement, he did not deny the charge. At the trial Jacqueline was called as a witness for the prosecution, after receiving assurance of immunity by the Federal and State authorities. In her testimony she repudiated her written statement and said that she did not make a purchase from Williams; that the drugs which she delivered to the officers had been secreted in her coat and had not been discovered by the officers at the time they searched her clothing; and that she took the currency and threw it out the window. The State promptly claimed surprise as a result of this testimony and the witness was made a court's witness and the State was permitted to cross-examine her. On cross-examination she still testified that she had not purchased the drugs from defendant, but she admitted that she had previously signed a

statement in which she said she made such a purchase and admitted that she had testified before the grand jury that she bought drugs from defendant.

For the defense the defendant testified that Jacqueline Hill had come to his apartment at the time in question but claimed that she said nothing about the purchase of narcotics and did not give him any money. The defendant said that he went up to the fourth floor from his third floor apartment to see a friend of his. He testified that he never heard Jacqueline tell any person that he had sold narcotics to her.

In the *Calhoun case* we commented upon Williams's testimony. In that case we said, 22 Ill.2d 31, 34, "Williams was not convincing in his explanation of the unexpected visit to his apartment by Jacqueline. A reading of the cold record of his testimony reveals many earmarks of falsity. There was equivocation, evasiveness, vagueness on critical issues and failure to present a plausible, coherent story. The trial judge, additionally, had the advantage of observing Williams while he was testifying. So much is revealed by the tone of voice, facial expressions and general demeanor of a witness. The trial judge, in his search for the truth, ruled against both defendants. We are convinced that his determination was correct." Our review of the record in the present case satisfies us that our evaluation of Williams's testimony in the *Calhoun case* was entirely correct. We are of the opinion that the evidence in the present case was sufficient to establish the defendant's guilt beyond a reasonable doubt. The evidence showed that Jacqueline Hill went to the defendant's apartment, that Williams went to the fourth floor where a quantity of narcotics was later found, that Jacqueline Hill returned shortly thereafter with some narcotics, that Jacqueline twice accused the defendant of selling her narcotics under circumstances which would normally prompt a denial by an innocent person; and that the defendant when confronted with these accusations did

not deny them. This evidence was sufficient to establish defendant's guilt.

The defendant contends that the trial court erred in making Jacqueline Hill a court's witness. The contention here is that the State was not surprised by Jacqueline's testimony since she had testified at a preliminary hearing that the defendant did not sell her narcotics. In establishing a foundation for examining Hill as a court's witness the State brought out that when the witness had testified before the grand jury she testified that the defendant had sold her narcotics. Therefore, at the time of the trial the State knew that Jacqueline had originally accused the defendant, both verbally and in a written statement, that she later retracted this accusation at the preliminary hearing, but that her last testimony before the trial, which was given before the grand jury, did accuse the defendant of selling her narcotics. Under these circumstances we think that the State had the right to call her as a prosecution witness originally, and grant her immunity, since they could reasonably assume that her testimony at the trial would be the same as her testimony before the grand jury. When she retracted her accusations of the defendant at the trial, the State had the right to claim surprise and to request that she be called as court's witness. We are of the opinion that the action of the trial court in calling Jacqueline Hill as court's witness was within the court's discretion and was not error.

The defendant also contends that the trial court improperly admitted certain evidence. It is first argued that the trial court permitted the prosecutor to conduct an improper cross-examination of Jacqueline Hill in laying the foundation for her testimony as a court's witness. Specifically, it is contended that the prosecutor should not have been permitted to paraphrase Jacqueline's testimony before the grand jury but should have inquired as to whether she made specific answers to specific questions. The method of cross-examination which defendant claims the court should

have required is the method prescribed when a party seeks to impeach a witness. However, when a witness for the State gives surprise testimony the court may permit the State to examine the witness to show that he is giving un-expected testimony, and such procedure does not amount to impeachment. (Cf. *People* v. *Quevreaux,* 407 Ill. 176.) It is, therefore, not necessary in such cases to follow the procedure prescribed for impeaching a witness, and the method of cross-examination in such cases rests largely in the discretion of the trial judge. (*People* v. *Wesley,* 18 Ill.2d 138.) We find no error in the procedure followed by the State and permitted by the court.

The defendant's next contention is that since Jacqueline Hill admitted that she had made contradictory statements in a written statement, the State had no right to introduce the statement itself. The argument finds some support in *Illinois Central Railroad Co.* v. *Wade,* 206 Ill. 523, 532, in which we stated that if a witness admitted making a former inconsistent statement, further proof of that fact might be unnecessary. However, in the *Wade case,* the witness did not make such a statement and the court held that the court should have permitted further proof of the former incon-sistent statements. Our holding in the *Wade case,* therefore, can not be said to be square authority for the proposition now advanced by the defendant. The better view would seem to be that a party is not foreclosed from making further proof of the former inconsistent statements even when the witness admits having made such statements, for the party may prefer to have these statements clearly brought out and emphasized. (3 Wigmore on Evidence, sec. 1037; *Hapke* v. *Brandon,* 343 Ill. App. 524.) We are of the opinion that the trial court properly admitted the written statement in evidence.

It is also urged that the trial court erred in permitting evidence of Jacqueline's conversation with the officers on the second floor landing after she had returned from the

defendant's apartment. As we have previously pointed out, her conversation at that time was admissible because it was made in the presence of the defendant and his silence could have been construed as an implied admission of guilt.

Finally, it is contended that the trial court erred in permitting the keys to the fourth floor apartment to be admitted in evidence. The abstract shows that when these keys were first offered in evidence both of the defendants objected and the court sustained the objection. After further proof the keys were again offered in evidence and the abstract shows that at this time only the defendant Calhoun objected. The contention now advanced by the defendant Williams is, therefore, not open for consideration upon this writ of error, no objection having been made at the trial.

The judgment of the criminal court of Cook County is, therefore, affirmed.

*Judgment affirmed.*