Donald Allen **BENTLEY, Jr.,** Appellant,

v.

**STATE** of Alaska, Appellee.

No. 498.

Supreme Court of Alaska.

Jan. 8, 1965.

See also Alaska, 393 P.2d 225.

William J. Moran, Anchorage, for appellant.

James N. Wanamaker, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This is an appeal from an order of the superior court denying appellant's motion under Criminal Rule 35(b) to vacate and set aside sentence.

Appellant was convicted of assault with a dangerous weapon. At the trial the complaining witness, Omar, testified that in an altercation in a bar appellant had hit him in the stomach and that later Omar discovered he had been stabbed.

A prosecution witness, Mrs. Doreen Fambrough, testified that she saw appellant stab Omar with a knife. On cross examination Mrs. Fambrough at first denied, and then later admitted, having told appellant that she had never seen a knife. Mrs. Fambrough testified that what she told appellant was not true, and that she had made this statement to him for the purpose of leading him to believe that she wouldn't testify against him. Her objective in so misleading appellant was, according to her testimony, to ingratiate herself with appellant so that he would return $5,000 which he had obtained from her by beating her and by threats of further beatings.

Mrs. Fambrough's statements to appellant were made in the course of a conversation

between them in a hotel room about two weeks following the stabbing of Omar. Appellant had arranged with a private detective agency to have a tape recording made of the conversation. At the trial appellant's counsel attempted to offer the entire tape recording in evidence for the purpose of impeaching Mrs. Fambrough. This offer was denied and the tape excluded from evidence by the court on the ground that under cross examination Mrs. Fambrough had admitted making the inconsistent statements regarding the stabbing, that these admissions had the effect of impeaching her, and that since she had been impeached by her own admissions it would be pointless to introduce the tape in evidence.

The question of the admissibility of the tape recording was again considered by the court on appellant's motion to vacate sentence under Criminal Rule 35(b). The court found that in attempting to introduce the recording appellant's counsel was trying to get into evidence proof of specific acts of misconduct on Mrs. Fambrough's part, and the court held that this would have been in violation of a rule of evidence relating to impeachment of a witness which at the time of the trial was governed by a statute then in force.[1] The court also found that as a practical matter it would have been impossi-ble to separate a great deal of wholly irrelevant and prejudicial matter from the few inconsistent statements made by the witness on the tape recording, and that much of what was said in the conversation between appellant and Mrs. Fambrough was collateral to the issues of the trial. The court further stated that it was not convinced that the tape recording was reliable, because of the unusual circumstances under which the recording was made and because it contained only a part of the conversation between appellant and Mrs. Fambrough.

On this appeal the only point made by appellant is that the tape recording ought to have been allowed into evidence. On this question divergent views have been expressed by the courts and legal writers. One view is that once a witness admits having made a statement conflicting with his present testimony, that ends the inquiry and further proof of the conflicting statement should not be allowed.[2] This view is espoused by Professor McCormick.[3] On the other hand, the position taken by other courts is that even where a witness admits having made a contradictory or inconsistent statement, that should not prevent the introduction of the statement in evidence for impeachment purposes.[4] This is the view adopted by Professor Wigmore.[5]

1. Section 58-4-61 A.C.L.A.1949 provided:
   "*Impeachment by adverse party: Evidence permissible.* A witness may be impeached by the party against whom he was called, by a contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief, but not by evidence of particular wrongful acts; except that it may be shown by the examination of the witness or the record of the judgment that he has been convicted of a crime."
   This statute has since been repealed (S.L.A.1962, ch. 101, § 31.02), and has been incorporated as rule of evidence in the Rules of Civil and Criminal Procedure. Civ.R. 43(g) (11), Crim.R. 26 (a).

2. Briggs v. Chicago Great W. Ry., 248 Minn. 418, 80 N.W.2d 625, 635 (1957); Employers Liab. Assur. Corp. v. Groninger & King, 299 S.W.2d 175, 180 (Tex.

Civ.App.1956); People v. Sykes, 44 Cal. 2d 166, 280 P.2d 769, 772 (1955), cert. denied, 349 U.S. 934, 75 S.Ct. 780, 99 L.Ed. 1263 (1955); Ewer v. Johnson, 44 Wash.2d 746, 270 P.2d 813, 817 (1954); Rakes v. State, 158 Neb. 55, 62 N.W.2d 273, 278 (1954); Schwam v. Reece, 213 Ark. 431, 210 S.W.2d 903, 908 (1948).

3. McCormick, Evidence § 37, at 68 (1954).

4. Gordon v. United States, 344 U.S. 414, 420–421, 73 S.Ct. 369, 97 L.Ed. 447, 454–455 (1953); United States v. Krulewitch, 145 F.2d 76, 79, 156 A.L.R. 337, 340–341 (2d Cir. 1944); People v. Williams, 22 Ill.2d 498, 177 N.E.2d 100, 103 (1961), cert. denied, 369 U.S. 806, 82 S.Ct. 646, 7 L.Ed.2d 552 (1962); People v. Schainuck, 286 N.Y. 161, 36 N.E.2d 94, 96 (1941).

5. 3 Wigmore, Evidence § 1037, at 723 (3d ed. 1940).

We believe that the latter view which would permit introduction of the tape recording should govern in the circumstances of this case. This is a criminal matter where a man's liberty is at stake. Omar testified that appellant hit him in the stomach, but that he didn't know until later that he had been wounded. Appellant denied having hit or stabbed Omar. No other witness with the exception of Mrs. Fambrough testified that appellant had either hit or stabbed Omar. It seems apparent that the case against appellant to a large extent hinged on Mrs. Fambrough's testimony, because she is the only person who claimed to have seen appellant with a knife. Mrs. Fambrough's credibility, which was for the jury to determine, became an important factor in the case. Her credibility was undoubtedly impaired to some extent when she at first denied and then later admitted having told appellant that she had never seen a knife. But we think that the matter should not have ended there. The jury had the duty of appraising Mrs. Fambrough's trustworthiness. Such an appraisal might have been made with far greater discernment if the jury had been permitted to hear the taped conversation rather than being limited to hearing only Mrs. Fambrough's simple, unemphatic admission that she made a statement to appellant which was inconsistent with her testimony at the trial. The jury ought to have had the opportunity to consider the circumstances in which Mrs. Fambrough conversed with appellant and to weigh what she actually said against her testimony at the trial in order, if possible, to ferret out every detail of the motive which induced her to say to appellant that she had not seen a knife and then to tell the jury that she had seen one.[6] Such an opportunity was not available to the jury from the cross examination of Mrs. Fambrough to as great an extent as it would have been if they had been permitted to consider the tape recording. We hold that appellant was entitled to have the recording considered by the jury because it would have best informed the jury as to the recording's impeaching weight and significance.[7]

The admissibility of the recording is not barred by the possibility that it would have tended to show specific acts of misconduct on Mrs. Fambrough's part. The primary objective of introducing the recording was not to show acts of misconduct, but to allow the jury to give a discriminating appraisal to the witness's trustworthiness in the light of her contradictory statements. If acts of misconduct are also suggested or established from the conversation between the witness and appellant, this would be merely incidental and should not prevent the primary and legitimate objective of impeachment by inconsistent statements from being accomplished. For the same reason the fact that some of the conversation deals with collateral matters does not mean that the recording must be excluded. The admitted contradiction to Mrs. Fambrough's testimony regarding the knife relates not to a collateral matter but to the incrimination of appellant for the very crime with which he was charged. It would be only if the recording dealt merely with immaterial matters that it would not be admissible.[8]

Finally, we are not pursuaded that the tape should have been excluded because of the court's lack of conviction that the recording was reliable. The making of the recording was testified to by the person who made it, and Mrs. Fambrough was willing to admit everything that was on the tape even though she could not remember word for word what was said. It is true that from reading the transcript of the recording it appears that it contained only a part of the conversation between appellant

---

6. See Asgill v. United States, 60 F.2d 776, 779 (4th Cir. 1932).

7. Gordon v. United States, 344 U.S. 414, 421, 73 S.Ct. 369, 97 L.Ed. 447, 454 (1953).

8. Gordon v. United States, supra note 7.

and Mrs. Fambrough. But that doesn't mean that it should be excluded. This is merely another factor for the jury to consider in considering the impeaching weight and significance of the recording.

In support of the lower court's decision not to allow the jury to consider the tape recording, the state relies upon our decision in Patterson v. Cushman.[9] In that case which involved a car striking a child a witness testified that he had seen the child walking with one foot on the sidewalk and one foot in the street and then stumbling out into the street where he came into contact with the defendant's car. The witness was then shown a prior written statement, which he admitted having made, where he failed to say how the child got off the curb. The trial court excluded the statement from evidence and we held that this was not error, saying:

> "Redman admitted making the statements contained in the writing in question. That ended the inquiry. The material portions of the statement had been read to the jury, leaving no need for further proof on the subject. [citing cases] The written statement would not have contradicted Redman any more than his admission had already done." [Citing cases.][10]

The Patterson case is not authority for the proposition now advanced by the state. There the material portions of the witness's statement had been read to the jury, whereas here that was not done. In addition, we cannot say here, as we did in Patterson, that Mrs, Fambrough's conversation with appellant would not have contradicted her any more than did her admission that she had made certain statements to appellant in the course of their conversation. It is possible that the actual conversation between the parties might have convinced a jury that a witness who told such differing tales could not be believed on any occasion and that it was unsafe to base a conviction largely on that witness's testimony.[11] We believe that the court's error in not allowing the tape recording into evidence resulted in keeping from the jury relevant and important facts bearing on the trustworthiness of crucial testimony. We cannot say that such error did not influence the jury's verdict to the prejudice of appellant's substantial rights.[12]

The judgment is reversed and the case is remanded for a new trial.

 AREND, Justice (dissenting).

In Patterson v. Cushman[1], a civil case, we adopted the rule that, where a witness admits that he has made an earlier written statement inconsistent with his testimony at the trial, it is not error for the trial court to refuse to admit the prior written statement in evidence. As a reason for adopting that rule we stated that the written statement would not have contradicted (impeached) the witness any more than his admission had already done. I cannot convince myself that we should set up a different rule for criminal cases, and, therefore, I register this dissent.[2]

9. Opinion No. 233, 394 P.2d 657 (Alaska 1964).

10. Patterson v. Cushman, supra note 9, 394 P.2d at 661.

11. People v. Schainuck, 286 N.Y. 161, 36 N.E.2d 94, 96 (1941).

12. Gordon v. United States, 344 U.S. 414, 423, 73 S.Ct. 369, 97 L.Ed. 447, 455 (1953).

1. Opinion No. 233, 394 P.2d 657 (Alaska 1964).

2. For authorities expressing the view that, if a witness admits having made the impeaching statement, there is no reason for further proof on the subject and none should be received, see People v. Pianezzi, 42 Cal.App.2d 270, 108 P.2d 685, 690 .(1940), cert. denied, 314 U.S. 611, 62 S.Ct. 81, 86 L.Ed. 492 (1941); Tycer v. Hartsell, 184 Or. 310, 198 P.2d 263, 266 (1948); State v. Pitts, 62 Wash. 2d 294, 382 P.2d 508, 511 (1963); Blackburn v. Groce, 46 Wash.2d 529, 283 P. 2d 115, 117 (1955); 4 Jones, Evidence § 937, at 1767 (5th ed. 1958); McCormick, Evidence § 37, at 68 (1954).

The crucial issue in the present case is whether the appellant Bentley stabbed Abraham Omar. At the trial Doreen Fambrough testified that she actually saw Bentley with a knife in his hand stab Omar in the abdomen. On cross-examination she first denied but finally admitted that she had previously told the defendant that she did not see him stab Omar. It seems to me that Fambrough's admission regarding the prior inconsistent statement adequately placed before the jury the issue as to her credibility. To admit all of the conversation between Fambrough and Bentley, as recorded on the tape, would only be time-consuming and would tend to distract the attention of the jury from the crucial issue. Not only is the tape repetitive of what Fambrough had admitted on cross-examination, but it tends to overemphasize the importance of the inconsistent statements.

The transcription of the taped conversation filled twenty-four typewritten pages. The conversation on the tape regarding the signing of a statement by Fambrough for the police officers that she had seen Bentley stab Omar followed by her admission to Bentley that she did not actually see him "knife" Omar took up less than five pages. The remainder of the transcription from the tape deals with matters unrelated to the alleged stabbing of Omar, namely: Fambrough's account of a conversation she had had with a person known as "the preacher"; her "frame-up" of criminal charges against the appellant that he had assaulted and battered her; her description of a fight she had had with a woman at one night club and with a man at another; the lurid details of an illicit love affair between Fambrough and the appellant at the very time that the tape recording was being made; and Fambrough's account of her affair with, and mistreatment by, a man in Vancouver, Washington.

It is true that some of the foregoing incidents were evidence of such bad moral character as to render Fambrough unworthy of belief. However, under the former statute, and now by rule of court, as set out in note 1 of the majority opinion, bad moral character may only be shown by general reputation, not by specific acts of misconduct on the part of the witness sought to be impeached.

It cannot be denied that admission of the tape in evidence would have discredited Fambrough's testimony much more than her dry admission of having made a prior inconsistent statement. However, in that event, the tape's effectiveness would have depended largely upon its vivid portrayal to the jury of specific acts of misconduct of the witness in her personal life.

I believe that the reasons given by the trial court for excluding the prior inconsistent statement (in this case the tape recording) as mentioned in the opinion of the majority, are sound and practical and more compelling than those advanced by my colleagues and the authorities they cite for admitting such a statement. For the reasons stated in this dissent, I conclude that the judgment of the trial court should be affirmed.