**George M. CLIFTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1726.**

Court of Appeals of Alaska.

July 8, 1988.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions, and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and SCHULZ, Superior Court Judge.*

## OPINION

COATS, Judge.

George M. Clifton was convicted, following a jury trial, of one count of sexual abuse of a minor in the first degree, and two counts of sexual abuse of a minor in the second degree. AS 11.41.434(a)(2)(B); AS 11.41.436(a)(3)(B). Judge James K. Singleton sentenced Clifton, a first felony offender, to a composite sentence of twelve years with two years suspended. Clifton appeals his conviction and sentence to this court.

## FACTS

On March 27, 1985, J.B.M., an eleven-year-old boy, was brought to the nurse's office and questioned by social worker Dorothy Lee because of an allegation that he had engaged a younger child in sex play. During the interview, J.B.M. stated that his stepfather, George Clifton, had sexually abused him. J.B.M. stated that the abuse had been occurring about twice a week since November 1984. According to J.B.M., after his mother and sister had left in the morning, Clifton would have J.B.M. come into Clifton's bedroom. Clifton would have J.B.M. lie on his bed, and Clifton would ask him to pull his pants down. Clifton would pull out his own penis, shake it, and then rub, kiss, and lick J.B.M.'s penis. J.B.M. would also put his penis in Clifton's mouth. J.B.M. stated that this had happened the week prior to the interview, and that he had been late to school twice because of Clifton's actions. J.B.M. said that Clifton warned him not to tell anyone of the abuse or else J.B.M. would get in trouble.

Following the interview with J.B.M., Dorothy Lee talked to Clifton's stepdaughter, C.M., age thirteen. C.M. also stated that Clifton had sexually abused her. She claimed that Clifton had come into her bedroom on four or five different occasions and touched her sexually. C.M. repeated

her claims in interviews conducted later that day by Dorothy Lee and an agent of the Air Force Office of Special Investigations. J.B.M., however, denied acknowledging his report.

On April 1 or 2, 1985, J.B.M. retracted his allegations of sexual abuse completely. He claimed that he made up the accusation because the social worker had scared him and made him believe that he might get into trouble. C.M. also retracted the bulk of her accusation. C.M. stated that Clifton had only come into her bedroom and touched her sexually one time. She suggested that Clifton may have been sleepwalking at the time. Clifton apparently has some history of sleepwalking.

Clifton was ultimately indicted for two counts of sexual abuse involving J.B.M. and one count of sexual abuse involving C.M. Clifton stood trial on these charges in May 1986. At trial, J.B.M. and C.M. adhered to their more recent accounts denying their earlier charges of sexual abuse. Both children admitted, however, that they had made statements to Dorothy Lee and Air Force investigators which accused Clifton of sexual abuse. The state argued at trial that J.B.M.'s and C.M.'s original statements of sexual abuse were truthful. Clifton testified at trial and denied abusing J.B.M. at any time. Clifton stated that he did wake up in C.M.'s bedroom one night, but that he was not aware of having touched C.M. He indicated that this was a period of time when he had been drinking extensively, and indicated that he must either have been sleepwalking or in an alcohol-induced blackout. The jury found Clifton guilty on all three counts.

## SUFFICIENCY OF EVIDENCE

Clifton first argues that the evidence on Counts I and II, which involved sexual abuse of J.B.M., was insufficient to support a conviction. Clifton essentially argues that his case is similar to *Brower v. State*, 728 P.2d 645, 647–48 (Alaska App.1986), in which we held that an uncorroborated prior inconsistent statement was insufficient to

* Sitting by assignment made pursuant to article    IV, section 16 of the Alaska Constitution.

establish the sexual assault charges in that case. The question at issue is whether J.B.M.'s prior inconsistent statement was sufficiently corroborated to support Clifton's convictions on the two charges involving sexual abuse of J.B.M.

In *Bodine v. State*, 737 P.2d 1072 (Alaska App.1987), we discussed the kind of corroboration necessary to support a prior inconsistent statement. The rule governing corroboration, we said, "is a flexible one, which is grounded in common sense: corroborating evidence is sufficient where it induces a rational belief in the truthfulness of a witness' testimony." *Id.* at 1075. In *Bodine*, we found that the alleged victim's prior inconsistent statement was sufficiently corroborated to support a conviction. In addition, we specifically rejected the contention that the corroborating evidence had to relate directly and specifically to the sexual acts charged in the indictment. Instead, we looked at all of the evidence in the case to determine whether reasonable jurors could conclude beyond a reasonable doubt that the defendant was guilty of the crimes charged.

■ In reviewing the record in this case, we conclude that J.B.M.'s prior statements were sufficiently corroborated to permit the jury to convict Clifton. To a certain degree, the original statements of J.B.M. and C.M. corroborated each other. The state presented evidence that Clifton first molested C.M., but that C.M. told her stepfather to stop his activities. A few months later, Clifton started abusing J.B.M. The fact that both children reported the sexual abuse and then later withdrew the accusations is significant. At trial, the state presented expert testimony which tended to explain why children in sexual abuse cases would make charges and later withdraw those charges. The expert testified that it is not uncommon for a sexual abuse victim to recant his or her accusation against a parent, or stepparent, when the nonoffending parent supports the parent charged with the sexual abuse, and appears not to believe the child's accusations. The state presented testimony which tended to illustrate the pressures on J.B.M. to recant, including J.B.M.'s statement that he did not want to be responsible for putting his father in jail.

Clifton's reaction when he was confronted by Air Force Investigator Russell Oesch with the fact that J.B.M. had accused him of sexual molestation suggests consciousness of guilt and corroborates J.B.M.'s original statement charging Clifton with sexual abuse. Oesch testified that Clifton "just kind of hung his head and said that he didn't remember doing any of these." Oesch also testified that Clifton never denied that he had abused J.B.M. When Oesch pointed out the implausibility of Clifton's being unable to remember whether he had engaged in oral sex acts with his stepson, Clifton responded by saying he was afraid of ruining his marriage, career, and family. Thus, when the children's statements, and the evidence in this case are looked at in context, we conclude that the evidence was sufficient for a reasonable jury to find Clifton guilty of the charges beyond a reasonable doubt.

## EXTRINSIC EVIDENCE OF PRIOR INCONSISTENT STATEMENTS

■ Clifton next argues that the trial judge erred in admitting evidence of statements which J.B.M. and C.M. made to social worker Lee and Air Force Investigator Oesch. Clifton concedes that it was proper to bring in evidence of J.B.M.'s and C.M.'s prior inconsistent statements. He argues, however, that because J.B.M. and C.M. admitted making the prior inconsistent statements, it was error for the trial court to allow Lee and Oesch to testify to these statements which J.B.M. and C.M. had already admitted making.

Clifton did not object to admission of this evidence at trial. We therefore review this issue under a plain error standard. Alaska R.Crim.P. 47(b). We find plain error only when the error is obvious and prejudicial. *Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978).

Alaska Evidence Rule 801(d)(1)(A) allows the admission of prior inconsistent statements as nonhearsay testimony. Clifton points out that, under the evidence rule,

prior inconsistent statements are to be excluded unless the witness was given "an opportunity to explain or deny the statement." Clifton argues that once a witness admits having made a prior statement which differs from the witness' trial testimony, additional proof of the prior statement is no longer necessary.

There is some authority allowing a trial judge to exclude extrinsic evidence of a prior inconsistent statement when the witness at trial admits making the prior inconsistent statement. *See Patterson v. Cushman*, 394 P.2d 657, 661 (Alaska 1964). In *Bentley v. State*, 397 P.2d 976, 978 (Alaska 1965), however, the supreme court held that it was error for the trial court not to allow a criminal defendant to introduce a tape-recording of a prior inconsistent statement made by a key prosecution witness under the particular circumstances of that case. Therefore, whether or not to admit extrinsic evidence of a prior inconsistent statement appears to be a matter committed to the trial court's discretion.

In the instant case, J.B.M. and C.M. did not admit making all of the statements to which Lee and Oesch testified. Furthermore, J.B.M.'s and C.M.'s demeanor, and the exact statements which they made, had probative value. It does not appear to us that admission of these statements had undue prejudicial effect. A.R.E. 403. Accordingly, under these circumstances, it seems clear that admitting extrinsic evidence of the statements that J.B.M. and C.M. made to Lee and Oesch did not amount to plain error.

## EXPERT OPINIONS

Clifton next claims that the trial court erred in allowing two expert witnesses to express opinions concerning J.B.M.'s and C.M.'s claims that they had not been abused as they had initially alleged. Again, there was no objection to this testimony at trial. We therefore review the admission of this evidence for plain error.

It is generally improper for a witness to testify to the credibility of another witness' testimony. *Walker v. State*, 674 P.2d 825, 831 (Alaska App.1983). These credibility determinations are particularly dangerous when offered as expert testimony. *Rodriquez v. State*, 741 P.2d 1200, 1204 (Alaska App.1987).

### A. Susan Wibker

■ Psychologist Susan Wibker described one of her counseling sessions with C.M., in which C.M. told her that Clifton may have been sleepwalking when he touched C.M. sexually. Wibker described how she sought to show C.M. that, if in fact the abuse was not the result of a volitional act by Clifton, it might happen again. Wibker then said that C.M.'s inconsistency—attributing the abuse to sleepwalking, but believing that Clifton could make a volitional choice not to do it again— "made me really doubt whether or not she thought he was really sleepwalking."

Wibker's testimony was made on redirect examination and used to clarify a point which the defense made on cross-examination. [Tr. 525] The remark was made in passing, and merely indicated a specific problem that Wibker had with C.M. in counseling. The remark was neither repeated in argument nor emphasized in any way during the remainder of the trial. Under these circumstances, we do not find plain error. *See Moor v. State*, 709 P.2d 498, 509 (Alaska App.1985) (statement that ninety-nine percent of all sexual misconduct reports are true was found not to be plain error).

### B. Lucinda Laird

■ Social worker Lucinda Laird also made a statement during cross-examination by Clifton that "we did not just buy [J.B.M.'s] recant, lock, stock, and barrel the way he and the family did." This response came in on cross-examination by Clifton. Laird was explaining that, at one time in talking with J.B.M., she was attempting to tell J.B.M. that he might still have to testify even though he had recanted his earlier accusations against Clifton. This remark was made in passing and was not emphasized in any way in the case. Moreover, the statement indicated only that the social workers were not sure whether to believe J.B.M.'s statements recanting his earlier

accusations. Again, we do not find plain error.

### CONFIDENTIALITY OF CINA

The state commenced a Child in Need of Aid (CINA) action involving C.M. and J.B. M. after learning of the accusations of sexual abuse. In connection with the CINA action, Mrs. Clifton, C.M., and J.B.M. consulted with state social workers, and the children also saw a state-approved psychological counselor. Clifton argues that the trial judge erred in allowing evidence to be admitted at the trial which was originally obtained in connection with the CINA action.

At trial, two state social workers testified to statements by Mrs. Clifton, C.M., and J.B.M. made in connection with the CINA action. One of the children's psychological counselors testified to statements of the children and Mrs. Clifton. Clifton did not object to admission of this testimony.

■ Clifton now contends that allowing this testimony violated the policy of confidentiality in CINA proceedings. CINA proceedings operate under statutorily mandated confidentiality. AS 47.10.070 (hearings closed to public); AS 47.10.090(a) (records may not be disclosed without court's permission). As the state points out, however, the policy of confidentiality in CINA proceedings is not absolute. The court has discretion to disclose records in CINA proceedings under AS 47.10.090(a). *See also W.M.F. v. Johnstone*, 711 P.2d 1187 (Alaska App.1986) (relatives of murder victims may, in the court's discretion, be permitted to attend closed juvenile delinquency proceedings). Because neither Clifton, his wife, J.B.M., nor C.M. objected to admission of this testimony at trial, Judge Singleton had no opportunity to decide whether there was any reason to maintain the confidentiality of this evidence. There certainly were reasons to admit this evidence: Clifton was charged with a serious criminal offense involving J.B.M. and C.M., and the testimony in question was relevant to determining whether the children's original charges of sexual abuse were accurate. Accordingly, we do not find plain error.

### PSYCHOTHERAPIST PRIVILEGE

■ During direct examination, the prosecutor asked C.M. and J.B.M. about statements they had made and attitudes they had displayed during their counseling sessions with their psychologist, Susan Wibker. Wibker also testified to statements made by the children, attitudes they displayed, and conclusions she had drawn about the dynamics in the Clifton household. In addition, C.M. testified about statements she had made to Dr. Douglas Stevens, another counselor. On appeal Clifton, argues that the trial judge erred in allowing these statements to be admitted into evidence because they are within the psychotherapist-patient privilege. A.R.E. 504(b). No objection was made to the admission of this evidence at trial, therefore, we review this issue for plain error only.

Evidence Rules 504(b) and (c) provide:

(b) *General Rule of Privilege.* A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional conditions, including alcohol or drug addiction, among himself, his physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

(c) *Who May Claim the Privilege.* The privilege may be claimed by the patient, by his guardian, guardian ad litem or conservator, or by the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient.

The plain language of the rule appears to require that someone act to exercise the privilege. That simply was not done in this case. Consequently, we do not find plain error.

### DOUBLE JEOPARDY

Clifton next contends that allowing separate convictions for Counts I and II violat-

ed his federal and state guarantees against double jeopardy. Count I charged Clifton with engaging in sexual penetration with J.B.M. The act of sexual penetration involved fellatio. Count II charged Clifton with engaging in sexual contact with J.B. M. The act of sexual contact involved masturbation. Clifton claims that the two offenses could have occurred as a single episode, and that therefore the separate convictions and sentences on Counts I and II violated the constitutional prohibitions against double jeopardy. U.S. Const. amend. V; Alaska Const. art. 1, § 9.

In *Oswald v. State*, 715 P.2d 276 (Alaska App.1986), the defendant digitally penetrated a minor female and then had genital intercourse with her shortly thereafter. He was convicted of two offenses, one for the digital penetration, and the other for the genital intercourse. We concluded that the two sexual offenses constituted one continuous assault, and that only one conviction and one sentence was permitted. Likewise, in *Rodriquez*, 741 P.2d at 1207, we accepted a state's concession of error that only one act was involved when Rodriquez had both committed fellatio and masturbated a minor victim.

█ Moreover, in *Horton v. State*, 758 P.2d 628 (Alaska App.1988), this court held that the state has the burden of showing that two separate acts were not part of the same transaction before we would allow two convictions and sentences. Thus, when there is ambiguity whether one or more acts has occurred, the ambiguity is resolved against the state. Although Clifton did not raise this double jeopardy point below, double jeopardy issues may be raised for the first time on appeal without prejudice. *Id.* at 632.

█ The state argues that more than one sexual act occurred between J.B.M. and Clifton. J.B.M. initially accused Clifton of abusing him twice a week for a period of several months. At trial, J.B.M. and Clifton testified that no abuse occurred. The state argues that the jury did not believe this latter version because they convicted Clifton. Clifton points out, however, that it is at least remotely possible

that he abused J.B.M. only once, and that he performed the acts of fellatio and masturbation together as part of one continuous assault.

Although J.B.M. initially claimed he had been sexually abused many times, he only specifically described one incident, the most recent incident, when he was late for school because of the abuse. It was possible that the jury focused on that incident alone. It was the only incident specifically identified and the only incident with school records as corroborating evidence. Furthermore, the jury instructions did not require the jury to decide if more than one incident occurred. Nor was the jury required to determine whether they totally believed J.B.M.'s initial accusation. The instructions required only that the jury find that each type of alleged abuse happened once. We therefore conclude that Clifton's conviction on Count II should be reversed, and his sentence on that count should be vacated.

## SENTENCE APPEAL

The jury convicted Clifton of sexual abuse of a minor in the first degree. AS 11.41.434(a)(2)(B). Sexual abuse of a minor in the first degree is an unclassified felony with a maximum sentence of thirty years. There is a presumptive sentence of eight years for a first felony offender. AS 12.-55.125. Clifton is a first felony offender, and Judge Singleton imposed the eight-year presumptive term on this count.

The jury also convicted Clifton of sexual abuse of a minor in the second degree for masturbating J.B.M. Judge Singleton imposed a two-year concurrent sentence on this count. We have held that this sentence must be vacated. The jury also convicted Clifton of sexual abuse of a minor in the second degree, AS 11.41.436(a)(3)(B), for engaging in sexual contact with C.M. Sexual abuse of a minor in the second degree is a class B felony. A class B felony carries a maximum penalty of ten years. There is a presumptive sentence of four years for a second felony offender. AS 12.55.125. Judge Singleton imposed a sentence of four years with two years suspended on this count. He imposed this

sentence to run consecutively to the sentence on Count I. Therefore, Clifton's composite sentence is twelve years with two years suspended.

Clifton argues that Judge Singleton did not make sufficient findings to justify giving him a consecutive sentence. Clifton points to *Lacquement v. State*, 644 P.2d 856, 862 (Alaska App.1982), where this court held that consecutive sentences for multiple offenses may not exceed the presumptive term for the most serious offense unless the record shows that a longer period of incarceration is necessary to protect the public. He argues that Judge Singleton did not make this finding, and that the record cannot support this finding.

One purpose of the legislature in passing the revised criminal code and establishing presumptive sentencing was to eliminate unjustified disparity in sentencing. *Juneby v. State*, 641 P.2d 823 (Alaska App. 1982), *modified on rehearing*, 665 P.2d 30 (Alaska App.1983). A major loophole in the presumptive sentencing scheme, however, was that the statutes in effect at that time gave judges unfettered discretion to impose concurrent or consecutive sentences. *See* former AS 12.55.025(e). In *Lacquement*, we essentially applied the reasoning of an earlier Alaska Supreme Court case, *Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977) (requirement of affirmative finding by sentencing court that consecutive sentence is necessary to protect public), to presumptive sentencing. *See* 644 P.2d at 862. In 1982, however, the legislature amended AS 12.55.025(e), and this court and the supreme court have interpreted that statute as indicating a legislative preference for consecutive sentences. *State v. Andrews*, 707 P.2d 900, 908–10 (Alaska App.1985), *aff'd*, 723 P.2d 85 (Alaska 1986).

In *Jones v. State*, 744 P.2d 410 (Alaska App.1987), a defendant was convicted of two counts of manslaughter which arose out of a drunk-driving incident. We found in that case that the trial judge could impose a sentence greater than the five-year presumptive sentence for a single count of manslaughter without making a finding that the imposition of consecutive sentences was necessary to protect the public.

In light of the legislative preference for consecutive sentences expressed in AS 12.-55.025(e), we upheld the trial judge's conclusion that Jones' offense was so serious that consecutive sentences were necessary to reflect the magnitude of the crime. Thus, AS 12.55.025(e) has expanded the situations in which a trial judge may give consecutive sentences.

■ The legislature's intent to establish more uniformity in sentencing, however, still remains. Moreover, the Alaska Supreme Court has consistently directed trial courts to give reasons for any sentence. *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). Therefore, trial court judges may impose consecutive sentences that are in excess of the maximum penalty for the most serious offense, or which are greater than the presumptive sentence for the most serious offense. When this is done, however, we will review the sentence to make sure that the record reflects substantial reasons for the imposition of such a sentence.

■ We believe that the record in this case justifies the imposition of a sentence which is somewhat greater than the eight-year presumptive sentence for sexual abuse of a minor in the first degree. In sentencing Clifton, Judge Singleton found that Clifton committed several sexual acts. Two separate victims were involved, and the acts took place over a substantial period of time. In addition, Judge Singleton concluded that Clifton was unwilling to accept the responsibility for his offenses, and that there was a substantial risk of his re-offending. These reasons support the sentence in this case. Accordingly, we conclude that the sentence was not clearly mistaken.

Clifton's conviction on Count II is REVERSED, the sentence on Count II is VACATED, and all other convictions are AFFIRMED.

SINGLETON, J., not participating.